## WILL MANNING V. THE STATE.

### No. 1165.    Decided February 17th, 1897.

**1. Slander—Reputation of Prosecutrix—Charge.**

On a trial for slander, Penal Code, Art. 751, authorizes the general reputation for chastity, of the injured female alleged to have been slandered, to be inquired into; but, it does not require the jury to believe, beyond a reasonable doubt, that such reputation is bad, before they could acquit the defendant; and it is error for the court to so instruct the jury in the charge.

**2. Same—Proof of the Truth of the Alleged Slander—Charge.**

On a trial for slander, a charge of the court which requires the defendant to prove the truth of the alleged slander beyond a reasonable doubt, before the jury could acquit him, is erroneous.

**3. Same—Evidence.**

On a trial for slander, it is competent for the State to introduce in evidence, statements made by defendant to other parties, about the same time as those alleged in the indictment, which are charged to be slanderous.

**4. Same—Letter as Evidence.**

Where the contents of a letter are sought to be introduced in evidence, the letter should be produced, identified and itself offered in evidence. Parol evidence of its contents is inadmissible.

**5. Evidence—Comparison of Handwriting.**

Where a witness testifies, that, though he has never seen a party write, he has received many letters from her, and had afterwards talked with her about the contents of said letters. Held: His testimony, that a certain letter handed him was one of the letters received by him from her, through the mails, was sufficient to identify the letter so as to admit it as a specimen of her handwriting to be used for comparison with other letters claimed to have been written by her.

**6. Examination of Defendant as Witness—Remarks of Court.**

Where, upon his examination, in answer to a question by the State, defendant, as a witness, stated, that he had no recollection of the matter, it was error for the court, when he repeated this answer, to state, in the presence of the jury, that the witness refused to answer the question; his answer was not a refusal, but merely a statement that he did not remember the matter inquired about.

**7. Conduct of the Trial—Applause by Audience—Duty of the Court.**

On a trial for slander, when the court-room was crowded with spectators, who were boisterous in their laughter and applause of the State's counsel in his severe strictures and condemnation of defendant and his witnesses, and this conduct was repeated time and again, without any notice thereof being taken by the court, until defendant's counsel protested and remonstrated and took his bill of exceptions. Held: It was the duty of the court, at the very threshold, to promptly check such unseemly demonstration, and to prevent a repetition. On the first occasion, the parties should have been reprimanded and warned. On the second offense, some of them should have been identified and fined. Such conduct should not be permitted in a court of justice during the trial of a case.

APPEAL from the County Court of Lamar. Tried below before Hon. JOHN W. ROUNTREE, County Judge.

Appeal from a conviction for slander; penalty, a fine of $1000, and twelve months' imprisonment in the county jail.

The slander, as alleged in the information, consisted in a statement made by the defendant, in the presence of J. R. Scott and divers other persons, that he the said Manning "had had repeated sexual intercourse

with the said Arry Wilson for about three years; and, that she, the said Arry Wilson had had the clap three times, and that he had caught the clap from her three times. And, that she, the said Arry Wilson, had the clap when she was married, and that other men were keeping her," etc.

In so far as the proof of the above allegations in the information is concerned, the defendant himself testified, at the trial, and in his testimony stated that he had stated the matters as alleged to Scott. Defendant was a practicing physician, and he and Mrs. Wilson had been engaged to be married before she married Wilson. Their engagement had been broken off a short time before she married Wilson, and just after her marriage he made the statements, alleged to be slanderous, about her. In his testimony, he reasserted the fact of the truth of the statements which he had made to Scott concerning Mrs. Wilson—that is, that he had had repeated intercourse with her; that she had had gonorrhea three times and had given it to him three times. And that she had been kept by several other men, whose names he mentioned.

On the trial Mrs. Wilson herself testified. She stated, that she had been engaged to defendant, but denied that she had ever had sexual intercourse with him, or any other man before her marriage; that she had never had gonorrhea. She was asked, if she did not write a number of letters to defendant, and some letters were handed her which she denied that she had ever written, and denounced them as forgeries. She admitted that she had written some letters to defendant. She was asked, if, in one of these letters, she did not express great pain, "that he had ceased to love her," or words to that effect? And, if, in one of those letters, she did not request him to send her pictures to her? And, if she did not say, in substance, that she had sent his picture to Trenton, N. J.? To all of which questions the State objected on the ground, that the witness had the right to examine the letters before answering the question; which objection was sustained by the court, and the answers excluded. The defendant when testifying in his own behalf, was handed a letter, which, after examining, he said Mrs. Wilson had written to him; and that it was in her handwriting; and, he offered this letter in evidence for the purpose of contradicting and impeaching Mrs. Wilson's testimony, and for the further purpose of showing, that his statements to Scott were not made wantonly or maliciously, which letter is numbered 7, and is as follows:

"GROVE, TEXAS, Lamar County, Febry. 18–93.
*"Dr. W. N. Manning:*

"Dear Old Sweet-heart: I received your letter this eve and I was so surprised to hear from you. I came down home this eve and I went into the parlor, and when I saw the place where we had spent so many happy hours together, I sat down and cried. And, while I was crying, Mama came in and asked me what was the matter? and I put my arms around her neck, and said: Mama, the man who I love better than life

has turned away from me and learned to love another. And Mama said, it was nothing but what she expected for what Aunt Alice told her Sunday. Mama said, if you loved another better than you did me, for me not to grieve after you. But, Oh! darling, sweetest one on Earth, you are too dear and too near for me not to grieve. It has often been said, that absence is the grave of love; but, sweet one, it will never be that way with me, for Oh! darling, when old age shall come, you will be as bright in my memory as you are today, for I expect for my future life to be a perfect blank—for my whole future life depended upon you. Dear, you wrote as if you thought I had mistreated you. I would like to know in what manner I miss-treated you. I paid all the attention to you I had a chance to. As for new masher, I have none and never expect to. Of course I asked you to come to the party and was glad to see you come, and would be glad to see you come if it was forty times a day. Dr., you told me, before I went to Grove, you was not coming to see me while I was there. When I gave him the privilege to call Sunday. If I would have known you wanted to come he could not have come, for you know whenever you wanted to come, I turned others off for you; and, if you would have told me Sunday, when you was up there, that you wanted to come, I would have made him stand back for you. What more could I have done? Dear boy, why do you call me false hearted, when you know I have been so true and faithful. 'May God's richest blessings rain from Heaven like dewdrops, and light upon your pathway of happiness through life.' I may wish for you—forgotten, and no one to love me.          "ARRY LUDRICK."

"P. S. Dr., I sent that photo of you I have to Trenton, N. J., to have some small ones taken to wear in my watch. Dr., I would give the world to see you this night. Oh! it would kill me to think you will never allow me to call you mine any more."

The introduction in evidence of this letter was objected to by the State, and the objection sustained by the court and it was excluded.

On the question of the identity of the letters, which were introduced in evidence, and as to whether some of them were forgeries or not, as claimed by Mrs. Wilson, the defendant put one Braden upon the stand, to prove up by him a genuine letter he had received from Mrs. Wilson, as a standard for comparison of handwriting. The witness, Braden, testified: that he had never seen Mrs. Wilson write, but that he had received several letters from her and had talked with her afterwards about the contents of said letters. He was here handed a letter, which he said he had received through the mail from Mrs. Wilson in answer to one he had written to her. That it came through the postoffice, addressed to him, and that he afterwards saw her, and talked to her about the matters contained in it. And she spoke to him about having written a letter to him. He was then asked, if he knew Mrs. Wilson's handwriting, from correspondence, and if he knew who wrote the letters? The State objected, because he had not qualified himself as an expert;

had never seen Mrs. Wilson write, and that the letter was irrelevant. The court sustained the objections and refused to permit the witness to answer the question. Defendant's counsel then offered the letter itself in evidence as a standard of comparison. The State objected, that it had not been proved that Mrs. Wilson wrote it. The court sustained the objection, and excluded the letter as evidence.

While defendant was on the stand as a witness, the State asked him, "If he did not say to J. R. Scott, shortly after Mrs. Wilson was married, that, if she had kept her mouth shut, he would never have told it." Defendant answered, "I have no recollection of saying any such thing." Counsel for the State insisted that he answer the question, and, after defendant had given the same answer several times, the court remarked, in the presence and hearing of the jury, that the natural inference, from the answer of the witness was, that he refuses to answer the question. To which remark of the court, defendant also excepted.

The charge of the court was excepted to in several of its paragraphs. The principal ground of exception being directed to that portion of the charge of the court which is copied in the opinion and which is held to be erroneous.

*Connor & Burdett*, and *Allen & Allen*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of slander, and his punishment assessed at a fine of $1000 and twelve months' imprisonment in the county jail, and prosecutes this appeal. On the trial the court instructed the jury as follows: "If, on inquiry as to the general reputation of the female, the evidence satisfies you beyond a reasonable doubt that her reputation for chastity is bad in the community in which she lives, then you should acquit the defendant; or if you believe that the defendant has established the truth of the alleged statement, then, and in that event, you will also acquit the defendant." This charge was excepted to on the part of appellant, and the giving thereof by the court is assigned as error. There is a good deal of evidence in the record touching the reputation of the prosecutrix for chastity, and on this branch of the case the charge of the court not only shifts the burden of proof on the defendant, but requires him to prove a want of chastity beyond a reasonable doubt. The statute on this subject (Art. 751, New Penal Code) authorizes the general reputation for chastity of the female alleged to have been slandered to be inquired into. We do not think the statute authorizing an inquiry into the general reputation of the alleged injured female for chastity was intended to require the jury to believe that the same was bad beyond a reasonable doubt before they could acquit the defendant. This is not the only vice in this charge, as further along, and as a part of the same charge, and evidently connected with it, the jury were instructed to acquit the defendant if they

believed he had established the truth of the alleged statement. The question of reasonable doubt seems to constitute a part of this charge. It precedes it, and in its connection appears to qualify this portion of the charge, and to require of the defendant to prove the truth of the charge beyond a reasonable .doubt. As thus construed, this portion of the charge was clearly erroneous. If it be conceded that the charge does not require the defendant to establish the truth of the charge beyond a reasonable doubt, but merely places the burden of proof on the defendant to establish the truth of the charge, then possibly it might be considered a substantive defense, resting within the peculiar knowledge of the defendant, and comes within the rule laid down in Leonard v. State, 7 Tex. Crim. App., 417, and Ake v. State, 6 Tex. Crim. App., 398, shifting the burden of proof upon the defendant as to this matter. However, we do not deem it necessary to decide this question. The issue as to the chastity of the alleged injured female and the truth of the charge were both sharply contested, and a great deal of evidence on both sides was introduced. The charge above quoted in our opinion, was calculated to prejudice the rights of the defendant. We believe that it was competent for the State to introduce statements made at different times by appellant, similar to those alleged in the indictment as made by him about the same time. See, Hanners v. McClelland, 74 Iowa, 318, 37 N. W. Rep., 389. In our opinion, the court acted correctly in excluding the evidence on the cross-examination of Mrs. Wilson in regard to a certain letter alleged to have been written by her. The letter itself should have been produced and identified, and offered in evidence. It seems that this letter, which is numbered as Exhibit 7 in the record, was offered in evidence, and rejected. Under the circumstances of this case, we believe it should have been admitted. We also believe that the witness, David Braden, qualified himself to testify as to the handwriting of Mrs. Wilson (nee Ludrick), and that the letter identified by him as in her handwriting should have been admitted in evidence for the purpose for which it was offered; that is, as a specimen of her handwriting, for comparison with other letters alleged to have been written by her, and offered in evidence. We also believe the court committed an error when the defendant stated, in answer to a question by the State, that he had no recollection of the matter inquired about, and, on his repeating this answer, in stating, in the presence of the jury, that the witness refused to answer the question asked. We do not think this answer could be construed into a refusal to answer the question asked, but merely as a statement that he did not remember the matter inquired about. Appellant, by his eighth bill of exceptions, raises the question as to the proper conduct of the court in the trial of the case. Said bill of exceptions is as follows: "Be it remembered that on the trial of the above-entitled cause, and during the whole time said cause was being tried, there was a large crowd of persons in the court room, crowded around the jury, the witnesses, the attorneys, and the judge; that the whole of the space inside of the bar

and on the judge's stand was filled with such crowd; that people were crowded up to, on each side of, and behind the jury in the box; that such crowd so continued throughout the trial of the cause; that during the progress of the opening argument for the State said crowd broke into laughter or applause at the severe strictures and condemnations of the defendant and his witnesses by said counsel for the State; that said applause was repeated three several times by said crowd during a period of about fifteen minutes—the last one greater than the others; and no attention was paid to said applause by the court, nor was said crowd in any way reprimanded for its conduct until after the defendant's counsel had called the attention of the court to such conduct after it had been repeated three times, and asked for a bill of exceptions to the court's permitting the same. The court then stated to the crowd that they were in a court of justice, and it was improper for them to indulge in applause of the remarks of counsel, and admonished counsel to refrain from further remarks encouraging such conduct, and distinctly told the jury it was wrong, and to pay no attention to it; but did not inform the crowd that it was a contempt of the court, nor did he warn them that they would be fined, or otherwise held in contempt of court, if such applause was repeated. To which action of the court in permitting such continued and repeated applause, without any reprimand or any attempt to keep order in the court, the defendant then and there excepted, and here and now tenders his bill of exceptions to the same. Be it further remembered that at the conclusion of the argument for the State the said crowd broke into a wild and uproarious applause, cheering, clapping their hands, and one throwing his hat into the air. The court then severely reprimanded said crowd, and told them their conduct was highly improper, was a contempt of the court, and that, if he knew who it was that was indulging in such conduct, he would fine them, and the court then admonished the jury that they were not to consider the applause of the crowd and their demonstrations, and should not permit the same to have any effect upon their returning their verdict, and then remarked to the jury that he knew they were good men, and would not be influenced by such applause and demonstration. And defendant here now tenders his bill to such action of the court in permitting said applause until it was objected to by the counsel for the defendant, in not warning said crowd that, if their conduct was repeated, they would be in contempt of the court, and would be fined for the same, and in not admonishing the jury not to consider the conduct of said crowd, nor be influenced by it, until after the argument had closed; and ask that this bill be allowed. Approved with the qualification that the court saw no one throw his hat, and could not learn who the disturbers were; and, further, the court was not requested to warn the crowd it was wrong to press up near the jury, or the court; and that the judge's stand was large, and only had two men actually in the stand, and they were sitting on low chairs, and were very quiet, behind the court, who was on a high chair." This bill of exceptions shows that the trial was

conducted in the midst of an excited crowd and such demonstrations on the part of the crowd appear to have been permitted by the court, as were calculated to unduly impress and influence the jury who were trying the case. We think it was the duty of the court, at the very threshold, to promptly check this unseemly demonstration, and not allow a repetition of the applause. When the first demonstration happened, the court, not anticipating it, might not have been able to prevent it; but it was within the power of the court to prevent any repetition of such conduct. In this case the bill of exceptions shows that said conduct was repeated without hindrance on the part of the court, until counsel for appellant were compelled to call the court's attention to the matter and take a bill of exceptions. And even after this the audience indulged in still more boisterous applause at the conclusion of the argument of State's counsel. By some effort this could have been prevented. On the first occasion the parties should have been reprimanded and warned. On the second offense, some of them should have been identified and fined. Such conduct should not be permitted in a court of justice, during the trial of a case, especially of this character, when the minds of the jury are liable to be easily excited and inflamed by such conduct on the part of the audience. For the errors discussed, the judgment of the lower court is reversed and the cause remanded.

*Reversed and Remanded.*