## HENRY TAYLOR V. THE STATE.

### No. 1642. Decided October 27, 1897.

**1. Arrest of Witness During the Trial for Confessed Perjury.**

On a trial for assault with intent to murder, a witness for the defense admitted that he had sworn to a lie on the examining trial, whereupon, as he was approaching the door after having left the witness stand, he was quietly arrested, the arrest not being made by order of the judge. Held, such arrest was not calculated to injure the rights of the accused. Had the arrest been made in the court room by order of the judge, and in the presence of the jury, the case would have been different.

**2. Statement of Facts.**

In no case will the court, on appeal, go behind the certificate of the judge to inquire whether or not the statement of facts is a fair statement.

**3. Joint Defendants—Different Punishments.**

Where two parties charged with the same offense are tried separately, it is no valid objection on the part of one that he received the maximum while his codefendant received the minimum punishment for the offense.

APPEAL from the District Court of Robertson. Tried below before Hon. W. G. TALIAFERRO.

Appeal from a conviction for assault to murder; penalty assessed, seven years imprisonment in the penitentiary.

The following condensed statement of the case, which is substantially correct, is taken from the brief of counsel for appellant:

On the 7th day of April, 1897, appellant and his family and his father-in-law (Dave Carter) lived in the same house on the farm of Burrell Lastor, in Robertson County, Texas, as subtenants under one Dred Drone. Dave Daniels, a negro, who had started to make a crop on the farm of E. Allen, had left his crop and was temporarily at the home of appellant and Dave Carter. Two young white men, J. C. and Dan Mc-Arthur, lived with E. Allen and were reared by Allen. Mr. Allen had furnished Dave Daniels a bedstead and mattress, which Daniels had not paid for, and which he carried away with him. On said 7th day of April, 1897, J. C. and Dan McArthur, armed with a shotgun and a Winchester rifle, went in a wagon to appellant's house to recover the property, or collect pay for same from Daniels. When they got to appellant's house appellant and Dave Carter and Dave Daniels and Ananias Carter were in the field at work. The McArthurs first talked to Daniels in the field, who promised to give up the bedstead and mattress. The McArthurs stopped the wagon at appellant's house, and appellant and Daniels and Ananias Carter came to the house and went in, and then Daniels came out and took his seat on the gallery, and about this time old man Dave Carter, appellant's father-in-law, came towards the house (after being called by appellant's wife to bring her the keys) with a gun in his hand. J. C. McArthur says: "I called Carter and raised my gun; at the time appellant's wife said, 'Don't shoot my papa,' and I told him to drop his gun." Carter said "I have nothing against you, and intend

38 Texas Crim. App.—16

to do you no harm." J. C. McArthur claims (which appellant denies) that appellant and Dave Daniels came to the door then and shot at him with pistols; that he shot at them three times and that someone shot him with small shot, and that his brother, Dan McArthur, shot around the house with a Winchester rifle and instantly killed old man Dave Carter.

An examining trial was held at Calvert, charging the McArthurs with the murder of Dave Carter. At the June term of the District Court, 1897, of Robertson County, appellant and Dave Daniels were indicted separately for assault with intent to murder J. C. McArthur. The McArthurs were not indicted. On the 27th day of July, 1897, appellant was tried and convicted, and his punishment assessed at seven years in the penitentiary. Then Dave Daniels was tried and convicted and given two years in the penitentiary. Appellant made a motion for a new trial, which was overruled by the court, and he appealed to the Court of Criminal Appeals of the State of Texas.

After the State's evidence was closed appellant offered Ananias Carter as a witness in his behalf, who testified in chief and was turned over to the district attorney for cross-examination, and said district attorney asked said witness if he had not testified upon the examining trial of J. C. and Dan McArthur, charged with murder, that no one in the house had a gun, and that no one fired at the said McArthurs. The witness answered that he did. The district attorney then said: "You now testify that you and Dave Daniels did shoot on said occasion?" The witness answered that "I do." The district attorney then asked the witness which was true, and the witness replied, "What I am now swearing is the truth." The district attorney then said to the witness: "Then you swore a lie on the examining trial. Did you?" and the witness answered, "Yes," and the district attorney then asked the witness why he swore a lie upon the examining trial; and the witness answered, that "he was persuaded to do so by defendant (Henry Taylor) and Dave Daniels."

This matter pertaining to the arrest of the witness after he had confessed to the perjury, is fully discussed in the opinion of the court, and no further statement is considered necessary.

*W. A. Gray* and *D. A. McAskill*, attorneys for appellant, filed an able brief in the case.

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Conviction for assault with intent to murder J. C. McArthur. There is no complaint to the charge of the court. Counsel for appellant requested two special instructions, which were given by the court. It appears from the record that Dave Carter, an old negro man, was killed by Dan McArthur; and in this difficulty the assault in this case was committed by appellant. On the examining trial a negro man by the name of Ananias Carter testified, swearing that no one in the house had a gun, and that no one fired at the McArthurs. The

proof in this case shows beyond all question that there was firing from the house, both of guns and pistols. If what Ananias stated upon that trial was true, then neither appellant nor anyone else was guilty of an assault upon the McArthurs. Upon this trial Ananias Carter swore that he did not see Henry Taylor shoot. "That I shot J. C. McArthur. I swore on the examining trial at Calvert that neither Henry Taylor, Dave Daniels, nor myself, nor anybody else, fired a shot from a gun or a pistol. All my evidence at Calvert was a lie. I am telling the truth now. Henry Taylor asked me to swear the lie at Calvert, and I did so." In the motion for a new trial, counsel for appellant states this transaction in the following manner, to wit: "The defendant offered, as the first witness in his behalf, Ananias Carter; and said witness testified for defendant, and was turned over to the district attorney for cross-examination; and said district attorney, upon cross-examination, asked said witness 'if he had not testified upon examining trial of J. C. and Dan McArthur, charged with murder, that no one in the house had any gun, and no one fired at said McArthurs.' Witness answered 'that he did.' Said district attorney then said, 'You now testify that you and Dave Daniels did shoot on said occasion?' And the witness answered, 'I do.' The district attorney then asked the witness, 'Which was true?' And the witness replied, 'What I am now swearing is the truth.' The district attorney then said to the witness, 'Then you swore a lie upon examining trial, did you?' The witness answered, 'Yes.' The district attorney then asked the witness, 'Why did you swear a lie upon the examining trial?' And the witness answered, 'I was persuaded to do so by defendant and Dave Daniels.' The district attorney, J. C. Scott, then jumped up excitedly, and asked, 'Where is Bishop' [Bishop being county attorney of Robertson County], and then called for Sheriff T. B. Jones, and then called upon the court to have the sheriff to take charge of the witness, and hold him for perjury; and the court ordered the sheriff to take charge of the witness and hold him for perjury; and the sheriff arrested the witness while upon the witness stand, and took him to jail from the witness stand. All of this proceeding and action of the court and district attorney and the sheriff occurred in the immediate presence and hearing of the jury, and during the trial of said cause, and in the midst of the cross-examination of said witness by the district attorney. That the examination of said witness was thus abruptly ended, and the witness thus summarily dealt with, and all of this was in the immediate presence and hearing of the jury trying the case. The defendant insists that said action of the court, and said conduct of the district attorney, was calculated to, and likely did, raise the prejudice and influence the minds of the jury against defendant," etc.

The statements of the district attorney, the judge who tried this case, and the testimony of two of the jurors, conflict with appellant's statement of the transaction. It appears from statements of the district judge and the jurors' affidavits that when Ananias Carter admitted that he had sworn to a lie, and that he was persuaded to do so by appellant

and Dave Daniels, the witness had left the witness stand, and was arrested in a quiet manner, as he was approaching the door. The judge states that he never gave an order for his arrest. If Ananias Carter was taken from the witness stand before appellant was through with his examination, or if he desired to re-examine him, and he was thus deprived of his right to do so, he should have excepted to the action of the district attorney and the court. No exception, however, appears. . If he was arrested, as stated by the judge, the district attorney, and the jurors, in a quiet manner, as he was approaching the door, we can not perceive how this was calculated to injure the rights of the accused. If the jury witnessed his arrest by order of the court, such conduct was calculated to impress upon their minds the belief that Ananias Carter had told a lie, was guilty of perjury, and, of course, not worthy of belief. That he had lied can not be questioned, and that, too, in regard to a very important question. That he had told a lie was evident to the jury, and the arrest could not have rendered it more patent than it was. If, however, the witness for the accused is arrested in the courtroom, for perjury, by order of the judge or the district attorney, upon the assumption that he committed perjury, we can not but hold that this would be the strongest indication of the opinion of the court that the witness had lied; and, as the court has no right to express an opinion as to the credibility of the witness, he has no right to do so by his conduct. Nothing could be more conclusive to an ordinary jury than for the court to order the witness to be arrested for perjury in the case, especially when sanctioned by the court. It would be a very rare case that this arrest could not be made beyond the view and hearing of the jury. See Snodgrass v. State, 36 Texas Crim. Rep., 207.

Counsel for appellant complain that appellant did not obtain a fair statement of the facts. This court under no circumstances can go behind the certificate of the judge. If so, we would be burdened with motions to amend and change statements of facts.

If Dave Daniels, who was charged and convicted of assault also, received only two years in the penitentiary as his punishment and appellant in this case received seven (the maximum punishment), we can not infer from this that he has not had a fair and impartial trial. Several witnesses swear that Taylor induced them to lie on the examining trial. The jury may have taken this into consideration when passing upon the extent of the punishment awarded. Be this as it may, we can not, as before said, presume (and reverse this judgment) that he did not have a fair trial, because he was awarded the highest punishment.

This record presents no such error as will justify this court in reversing the judgment, and it is accordingly affirmed.

*Affirmed.*