### Raymond Newton v. The State.

#### No. 455.   Decided February 23, 1910.

**1.—Murder—Charge of Court—Mutual Combat.**

Where, upon trial for murder, there was evidence that the deceased invited the defendant to come out in the road and settle the matter, but that the parties did not meet in the road, and deceased fired a shot in the house and the defendant fired at the deceased as he was leaving, there was no evidence to authorize a charge on mutual combat.

**2.—Same—Remarks by Judge—Discussing Testimony.**

Where, upon trial for murder, there was some question as to how many holes were in a garment worn by the deceased at the time of the homicide; and while defendant's counsel was examining the witness who testified that there were three holes in said garment, the court in the presence and hearing of the jury remarked that another witness had testified that there was but one hole in said garment, and that this settled it, the action of the court was reversible error.

Appeal from the District Court of Waller. Tried below before the Hon. Wells Thompson.

Appeal from a conviction of murder in the second degree; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

*W. J. Poole,* for appellant. ·

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of ·mur-

der in the second degree, his punishment being assessed at a term of ninety-nine years in the penitentiary.

Without going into a detailed statement of the facts, the evidence shows that appellant owed deceased, John Buchtein $1.50; that he had agreed to pay deceased the debt on the morning of the homicide. It also shows that deceased went from his place of residence, a short distance to where appellant lived for the purpose of collecting the debt. Deceased demanded payment; appellant told him he did not have it, that he only had a nickel, which he would give him. This statement disappointed and angered deceased. There were some words between them, and two shots were fired, one by deceased from his pistol and the other by appellant from a rifle. The record is in a very confused and uncertain condition as to the facts attending the killing; in fact, it is scarcely intelligible.

1. Among other matters submitted by the court to the jury was the issue of mutual combat. Appellant insists this was error, that there were no facts to justify or authorize such a charge, and that it was seriously detrimental to him. As we understand this record the evidence upon which the court based the charge was that given by the witness Roberta Newton. She says that deceased came over to the place of the homicide about 8 or 9 o'clock in the morning; that when he came he spoke to all present, and said good-morning, then turned to appellant and said, "Raymond, I thought you were going to pay me today, but you took the money and paid Mr. Penrice." Appellant remarked that he remembered the fact that he promised to pay deceased the money that day, and deceased said, "I was looking for it today." Appellant said, "I know you were looking for it." Then deceased said, "All right, we will settle it when you come out in the road." Appellant was standing in the door, and started back in the house and got his Winchester. At this point witness went in the house, and she heard two shots fired apparently in the house. In this connection she uses the following language: "When I heard the shots I saw Raymond; he had his gun in his hands. Mr. Buchtein was riding down the road, about fifty yards, I think, from the house at that time, his back was towards the house; it was not long after the shots fired before I looked. . . . The Winchester was not far from the door. I think Raymond had to go about five or ten steps to get the Winchester; the gun was sitting about the middle of the house; I think it was about five steps from the door." Then followed the following colloquy: "Q. When Raymond said, 'I will settle it with you now,' Mr. John said, 'You come out here in the road and I will settle it with you;' Raymond said all right, and jumped and got his gun? Answer. Yes, sir; I did not say that Raymond shot. I did not state before, Mr. Jordan, that I saw Raymond fire the first shot. I wrote my name to that statement. I don't know whether I stated in Judge Hanny's office that Raymond fired the first shot; I have forgot it if I did." She further testified: "I told you and Keet McDade

last court that Buchtein came up and began fussing and fired the first shot, and that is the truth. I was in the house when the first shot was fired. Buchtein pulled his pistol out of his bosom before Raymond run in the house, and that is why Raymond run in the house. When Buchtein pulled his pistol before the shots were fired, Dave Newton held up his hands and begged him not to shoot in his house, and that he would pay the dollar and fifty cents. . . . I remember of seeing a chair that morning on the gallery that was shot into; it was shot into that morning; I don't know who shot the shot that struck the chair; that chair was on the gallery by the door when it was shot into; that is the only chair on the gallery; the chair you exhibit to me is the chair that was on the gallery; that is the bullet hole that was shot through that chair that morning. I don't know whether Raymond could have shot that hole in that chair or not. I don't know where Raymond was when the first shot was fired. I did not see Buchtein when the shot was fired. I told you and Keet McDade that I did not know who fired the first shot, as I was in the house. Mr. Buchtein pulled his pistol once before the shots were fired. I never told you and Mr. McDade that Raymond said, 'We will settle it now.' When I heard him say we will settle it now, Mr. Buchtein pulled his pistol and Raymond ran in the house."

As we understand the record, this is the only testimony which could form the predicate for the charge on mutual combat. It is not controverted, but a conceded fact that there were but two shots fired. It is also uncontroverted that the pistol of deceased, which was found by him, had one empty chamber, that had just been discharged, and that appellant fired one shot. The shot which took effect in the chair was evidently fired by deceased. One shot took effect in the body of deceased, entering his back and coming out in front. The entrance and exit of the bullet shows that it ranged upward, coming out two or three inches higher in the front than it entered from the rear. The facts indicate that deceased fired the shot which took effect in the chair, and that appellant fired as deceased was leaving. Under these circumstances, and under this condition of the record, we are of opinion that the question of mutual combat was not an issue in the case. If the invitation of deceased to appellant to come out in the road and settle the matter meant a challenge to fight a duel with deadly weapons, the parties did not meet in the road. Deceased fired a shot into the house and appellant returned the shot. So from no standpoint of this evidence can the issue of mutual combat be in the case. It was, therefore, error on the part of the court to authorize a conviction on mutual combat. This charge had the effect of eliminating any question of self-defense as well as manslaughter.

2. There were several bills of exception reserved, one of which we think clearly manifests a violation of the statute. The bill shows that the rule had been invoked and the witnesses were under the rule. Jordan had testified there were two or three holes in the jumper worn

by deceased on the morning of and at the time of the tragedy which were burned in it since deceased was killed. While Myers was on the stand, appellant, to test his memory and to test his knowledge of the cause, held up the jumper that had been shown to be the one worn by deceased when he was shot, and pointed out to the witness that there were three holes in the jumper, and asked him if he saw the jumper soon after deceased was killed, and he said that he had, and that there were three holes in it at the time; whereupon the court in the presence and hearing of the jury remarked that the witness Jordan had testified that there was but one hole in said jumper when taken off of deceased, and that the other two holes had been burned in said jumper since then, and that settled it. Appellant urged various objections to this action on the part of the court, and asked that it be withdrawn from the jury because it was calculated to prejudice them against the accused, and because the testimony of Myers should go to the jury untrammelled by any remark of the court for their consideration of the veracity of the witnesses, etc. This action on the part of the court was in direct violation of the statute which prohibits the court from expressing any opinion in regard to the weight of the testimony. It was an issue before the jury, and the court accepted the statement of the witness Jordan as being true, and said in the presence and hearing of the jury that Jordan's testimony settled that question. The jury are the exclusive judges of the facts proved as well as the credibility of the witnesses and weight to be given the testimony. This remark of the court took away from the consideration of the jury this matter and settled it against appellant. This he was not authorized to do.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*