## BILL ENGLISH v. THE STATE.

No. 5138.    Decided June 18, 1919.

**1.—Murder—Change of Venue—Statutes Construed.**

While the statutes relating to a change of venue contain provisions prescribing means for either side to obtain a change of venue, these provisions, however, are not limitations upon the power vested in the trial court to change the venue on its own motion, when the judge is satisfied that a trial alike fair and impartial to the State and the appellant, cannot be had. Following Bohannon v. State, 14 Texas Crim. App., 272.

**2.—Same—Continuance—Order of Court—Change of Venue—Harmless Error.**

Where the defendant, before the order changing the venue was entered, made an application for a continuance, and in his order granting the change of venue the court stated that the order for continuance was vacated, without making a formal separate order, this irregularity under the circumstances was harmless. Following Blankston v. State, 80 Texas Crim. Rep., 629, 192 S. W. Rep., 1064.

**3.—Same—Arraignment—Practice in District Court.**

While the failure to arraign the defendant in the District Court of the County from which the venue was changed was irregular, yet where an arraignment was entered in the county to which the venue was changed, there was no reversible error. Following Goode v. State, 57 Texas Crim. Rep., and other cases.

**4.—Same—Reproduction of Testimony—Rule Stated.**

Where it was shown that a State's witness had given testimony at the examining trial, and had since died, and it appeared that said witness was cross-examined in the interest of the defendant, there was no error in the reproduction of his testimony. Following Young v. State, 199 S. W. Rep., 479, and other cases.

**5.—Same—Evidence—Expert Witness—Study of Books.**

Where it was objected that the physician, in testitfying as to the location of the wound upon deceased body, had no practical experience but based his opinion upon his information gained from the study of the medical authorities on gun-shot wounds, the same was untenable and there was no error. Following Rice v. State, 49 Texas Crim. Rep., 569, 94 S. W. Rep., 1029.

**6.—Same—Evidence—Declarations of Third Parties—Antecedent Quarrels.**

Upon trial of murder, testimony as to the remarks made by the deceased and defendant's brother, and to the transaction at a ball game leading up to the difficulty, and the antecedent quarrels before the homicide were admissible in evidence.

### 7.—Same—Cross Examination—Remarks by Court—Weight of Evidence.

Where a witness for the defendant had given important testimony for the defense, and State's counsel sought to lay a predicate to impeach him, and for this purpose asked him if he had not given certain testimony before the grand jury, to which the witness replied that .he did not remember, and upon repeating the question and a like answer the trial judge told the witness he must answer the question, to which the witness replied that he did not remember, and the court then said, "You certainly know whether you told the grand jury, and while I dislike harsh measures, etc., it occurs to me that you can answer that question," the same was an expression of an opinion by the court as to the credibility of the witness and the weight of his evidence, and was reversible error. Following Taylor v. State, 38 Texas Crim. Rep., 241, and other cases.

### 8.—Same—Charge of Court—Self-Defense—Degree of Force.

Where, upon trial of murder, the charge of the court on self-defense and the defense of another was fair and accurate, the expression that the defendant must not use more force than was necessary being a general statement was not reversible error. Following Moss v. State, 60 Texas Crim. Rep., 272.

### 9.—Same—Rehearing—Remarks by Court—Reversible Error.

Where the State's counsel pressed defendant's witness in an effort to secure from him an admission that in his testimony before the grand jury he had made false statements, and sought and obtained opportunity to correct them, and in doing so, when the witness insisted that his recollection was at fault, the court interposed with the statement, "You certainly know whether you told the grand jury that or not," and subsequently threatened the use of harsh measures, and made it plain to the jury that the witness willfully prevaricated; the witness having given important testimony favorable to the defendant, such remarks by the court was reversible error. Following Simmons v. State, 55 Texas Crim. Rep., 444, and other cases. Distinguishing Laon v. State, 69 Texas Crim. Rep., 221, 153 S. W. Rep., 305; Bankston v. State, 80 Texas Crim. Rep., 225, 189 S. W. Rep., 142.

Appeal from the District Court of Hunt. Tried below before the Hon. Thos. W. Thompson.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*C. E. Sheppard, J. A. Dial* and *O. C. Mulkey* for appellant—On question of charge of court on self-defense. Stubbs v. State, 81 Texas Crim. Rep., 75, 193 S. W. Rep., 677; McDowell v. State, 55 Texas Crim. Rep., 596, 117 S. W. Rep., 831; Black v. State, 65 Texas Crim. Rep., 336, 145 S. W. Rep., 944; Burnett v. State, 51 Texas Crim. Rep., 20, 100 S. W. Rep., 381.

*E. A. Berry,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant was charged with murder and convicted of manslaughter. The District Court of Hopkins County in which the indictment was filed entered of his own motion an order changing the venue of the trial to the adjoining county of Hunt. The appellant filed a motion to set aside the order, in which motion he sought to make an issue of fact as to the grounds for the court's contention that a trial alike fair and impartial to the accused and the State could not be had. The statute relating to change of venue contains provisions prescribing means for either the State or the accused to obtain a change of venue, and there is a provision, article 616 of the Code of Criminal Procedure making special provision for changing venue in cases where unsuccessful efforts have been made to obtain a jury. These provisions, however, are not limitations upon the power vested in the trial court to change the venue on its own motion when the judge shall be satisfied that a trial alike fair and impartial to the State and the accused cannot be had. Bohannon v. State, 14 Texas Crim. App., 271. The order of the judge in the instant case was duly entered setting out the reasons which satisfied him that the venue should be changed, and we think there was no error in his refusing to hear evidence proffered by the appellant challenging the correctness of his conclusion. Augustine v. State, 41 Texas Crim. Rep., 59. The appellant, before the order changing the venue was entered, made an application for a continuance and in his order granting the change of venue the court stated that the order continuing was vacated. Any irregularity in the failure of the court to make a formal and separate order setting aside the order continuing the case was under the circumstances harmless. Hamilton v. State, 40 Texas Crim. Rep. 464, 51 S. W. Rep., 217; Blankston v. State, 80 Texas Crim. Rep., 629, 192 S. W. Rep., 1064.

The order changing the venue recited that the appellant had failed to plead to the indictment and that the court had entered a plea of not guilty. A motion challenging the correctness of this statement was filed, and as we understand the qualification to the bill preserving the motion, the court accedes to the correctness of appellant's position, at least to the extent of stating that the plea of not guilty was entered without calling attention of appellant's attorneys thereto. Inasmuch as the appellant was regularly arraigned in the District Court of Hunt County, failure to arraign him in Hopkins County is an irregularity which, according to the decisions of this court, deprive him of no substantial right and is not such as to require a reversal. Ex parte Cox, 12 Texas Crim. App., 665; Caldwell v. State, 41 Texas 86. See also Goode v. State, 57 Texas Crim. Rep., 220.

There was no error in the reproduction of the testimony of the witness Bridges given at the examining trial since which he had died, it appearing that appellant was present and that the witness was

cross-examined i nhis interest.  Young v. State, 82 Texas Crim. Rep., 257, 199 S. W. Rep., 479;  White v. State, 83 Texas Crim. Rep., 252, 202 S. W. Rep., 737 and cases cited.

The appellant and his brother, Henry English, were participants in a game of basket-ball with a team from a neighboring village; the deceased and his mother, and as we gather from the evidence, his two brothers, were spectators.  During the game deceased was a partisan of the rival club and made a remark favoring it, which, according to some of the evidence, was responded to by the appellant's brother, Henry English, with an insulting epithet to deceased.  Appellant and his brother had gone to the village together and had changed clothes at the home of a relative and after the game they repaired to the same place to rechange their clothes and while there appellant armed himself with a pistol.  His brother was also armed with a pistol but the evidence does not disclose when or where he obtained it.  There was evidence from which the jury could have inferred that appellant knew that his brother was armed and he introduced testimony to the effect that before leaving the ball ground he was cautioned to be careful as the deceased had gone for a gun.  He and his brother went to the village and on reaching it the deceased and his two brothers were there and the deceased called upon appellant's brother to come into the street and fight him.  The evidence is conflicting as to the details of just what followed but a struggle ensued in which appellant's brother and one of the brothers of deceased took part, during which or immediately antecedent to which Henry English, appellant's brother attempted to draw his pistol and in the struggle the pistol fired.  Immediately thereafter the appllant fired the shots which resulted in the homicide.  Appellant claimed that during the struggle between his brother and others, and while he was in a few steps of him, the deceased approached in the general direction of himself and the struggle with his brother; that he was looking at him and looking angry and had his hand in his right-hand pocket and that he, appellant, told the deceased to stop, which he failed to do and when he reached a point within two or three steps of him appellant fired a shot hitting deceased in the breast.  Deceased turned and appellant shot him in the back .  He said: ''At that time it appeared to me that six or seven people had hold of Henry and I believed he was in danger of losing his life.''

Appellant's testimony relating to the position of the parties at the immediate time the shots were fired was controverted by several witnesses introduced by the State who claimed that none of the shots were fired while the deceased was facing appellant, but all the shots were fired while his back was turned.  Appellant, however, was corroborated by some witnesses.  There was testimony that at the time the deceased invited appellant's brother to fight that he said to him in appellant's presence that he had to take back the epithet he

had called him. Appellant in his testimony declared that he knew that Henry had called the deceased a son-of-a-bitch on the ball ground.

There was evidence from the physician who examined the body of deceased, and from other witnesses that there were two pistol wounds in the back, one in the breast, and that one bullet was under the skin in the front of the body. The physician, after testifying to the description of the wounds, stating that those in the back were small and round and that the one in the breast was larger and irregular, and after detailing his experience of about three years in the practice, and his information gained from study of the medical authorities on gun-shot wounds, gave his opinion that the entrance of those on deceased was in his back. The objection founded on the fact that the physician disclosed that he had no practical experience with such wounds was, under the authorities, not well taken. A witness may testify as an expert though his knowledge is derived alone from study of books. Enc. Ev., vol. 5, p 534; Cyc. vol. 17, p. 40. This rule has been applied to gun-shot wounds. People v. Philan, 123 Cal., 551, 56 Pacific, 424, and has received the sanction of this court. Rice v. State, 49 Texas Crim. Rep., 569, 94 S. W. Rep. 1029.

The remarks made by the deceased and appellant's brother at the ball game were properly received. Appellant's proximity to the parties and the surrounding circumstances were, we think sufficient to justify the inference that he heard the remarks. He admitted that he knew his brother had applied an insulting epithet to deceased, at the time he armed himself, and followed or accompanied his brother to the place where the homicide occurred; and went there, he claimed, because he desired to protect his brother from injury by deceased. There was evidence justifying the conclusion that he heard deceased demand a retraction of the insult of his brother immediately before the difficulty. The transaction at the ball game induced the difficulty in which the homicide took place, and even if appellant did not hear all that was said at the ball game, the evidence is sufficient to show that he adopted his brother's quarrel and acted with him in pressing it. This evidence was provable against the appellant on the doctrine of antecedent quarrels. Branch's An. P. C., sect. 1881, and upon the theory of conspiracy. Branch's An. P. C., sect. 693.

The appellant's witness Mooney gave in his behalf important testimony. The State's counsel sought to lay a predicate to impeach him and for this purpose asked him if it was not a fact that when he first went before the grand jury he testified that the deceased was approaching appellant and within two or three feet of him when appellant fired striking him in the breast. To this question the witness replied that he did not remember whether he gave that testimony or not. The question was repeated by counsel and the

trial judge told the witness he must answer the question to which
the witness replied that he did not remember. The court then asked if
he remembered going before the grand jury and he said he did, and
the court again told him he must answer the question and he said
he did not remember. The State's counsel then asked him if he
did not remember going before the grand jury the second time
and asking them to let him take back what he had sworn to
the first time, to which he replied: "I remember going back
but I don't remember all the conversation." The court, then re-
ferring to the former question, said "You certainly know whether
you told the grand jury that or not." The witness replied that
he did not remember whether he did or not; that he had for-
gotten if he did. The court then said: "I dislike very much to use
any harsh measures with you in this matter, you are a young
boy and I don't feel like being severe with you, but it occurs to me
you can answer that question." This proceeding and statement by
the court was excepted to as an expression of an opinion by the
court as to the credibility of the witness and the weight of his
evidence. The witness had given some important testimony for the
defendant. Among other things, he had testified that while the
appellant was on the ball ground he had heard the appellant warned
by a party stating to him that he had better be careful that de-
ceased had gone for a gun. He also testified that before the first
shot was fired he heard the appellant tell the deceased to stop.
This was important as corroborating the appellant who claimed that
he shot deceased in the breast and that the deceased was approaching
him and that before shooting he told him to stop. The necessary
effect of the court's statement to the witness, and the impression that
it manifestly was calculated to make upon the jury was, that in the
opinion of the court the witness was not telling the truth when he
said he did not remember his former testimony before the grand
jury. This expression of opinion by the court was calculated to
discredit the witness and to affect the weight that they gave to the
other facts to which he testified favorably to the appellant. We
are referred to the case of Loan v. State, 69 Texas Crim. Rep., 221,
153 S. W. Rep., 305, as one supporting the court's action. In that
case the witness in reply to all material questions said: "I don't
know." The court treating this as an arbitrary refusal to answer
entered a fine against the witness. It does not appear that he had
given any important testimony in behalf of the accused and for
that reason it would come within the rule which requires as a
predicate for reversal, on account of comment of the court, that the
record should show that the comment was calculated to injure the
accused. Rodriquez v. State, 23 Texas Crim. App., 503; Stay-
ton v. State, 32 Texas Crim. Rep., 35. In the case of Manning
v. State, 37 Texas Crim. Rep., 184, the remark of the court in the

presence of the jury, that the appellant, testifying as a witness, had refused to answer the question asked, was held error, it appearing that the appellant in reply to the question had stated that he had no recollection of the matter inquired about. We are unable to conclude that in the instant case the remarks of the trial judge were not of an injurious character upon the case of appellant. See Taylor v. State, 38 Texas Crim. Rep., 241; Simmons v. State, 55 Texas Crim. Rep., 444; McCullar v. State, 36 Texas Crim. Rep., 214; Newton v. State, 58 Texas Crim. Rep., 316; Deary v. State, 62 Texas Crim. Rep., 352; Scott v. State, 72 Texas Crim. Rep., 32. The fact that the witness Mooney disclaimed recollection of his former testimony before the grand jury was sufficient predicate for his impeachment. Fuller v. State, 30 Texas Crim. Rep., 559; Encycl. of Ev., vol. 7, p. 72.

In our opinion, the judge of the trial court in the charge gave a clear, fair and accurate statement and application of the law of self-defense and defense of another. The only criticism addressed to it is that in which the expression, "but no more force than the circumstances reasonably indicate to be necessary" was used. This expression occurs only in the general statement of the principles applicable to the doctrine of self-defense, and considering the remainder of the charge on the subject was not reversible error. Moss v. State, 60 Texas Crim. Rep., 272.

Because of the error pointed out the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING,

June 18, 1919.

MORROW, Judge.—When the witness Tom Mooney disclaimed recollecting the occurrences on his appearance before the grand jury and by reason thereof, the State successfully laid the predicate for impeaching him. Fuller v. State, 30 Texas Crim. App., 559. State's counsel, however, pressed the witness in an effort to secure from him an admission that in his testimony before the grand jury he had made false statements and sought and obtained opportunity to correct them. In this the State also succeeded in part. In pressing the matter when the witness insisted that his recollection was at fault, the court interposed with the statement: "You certainly know whether you told the grand jury that or not," and subsequently threatened the use of "harsh measures" in the language quoted in the original opinion. That in so doing the trial judge made it plain to the jury that in his judgment and opinion the witness wilfully prevaricated in stating that he did not remem-

ber the matter referred to. The witness had given important testimony favorable to the appellant, both as to the incidents immediately attendant upon the homicide and occurring a short time prior thereto. The State's counsel regarded his testimony of such importance as to impel them to undertake to discredit him. In this effort they proved by members of the grand jury that he had made contradictory statements before the grand jury touching the occurrences at the time of the homicide and succeeded in obtaining from him admissions of a similar nature. There was no contradictory statement developed, however, to that part of his testimony in which he said that before leaving the ball grounds he heard Lexie Harper tell the appellant that he had better be careful, that the deceased had gone to his house after a gun. This testimony was of great importance to the appellant in that it did not come from any other witness except the appellant. It afforded an explanation of his reason for arming himself after he left the ball grounds and before he went to town, and a reason for his following his brother Henry to town, and disclosed a fact within his mind at the time he fired the fatal shots which he claimed to have fired in defense of himself and his brother Henry. If the witness Mooney was discredited to the extent that the jury would not believe that Lexie Harper made the statement attributed to her, important elements of the defense were eliminated. The State was entitled to elminate them by the usual methods of impeachment, but insofar as the comment of the court upon the credibility of the witness contributed thereto, the appellant's legal rights were infringed. Any commenт by the court upon the weight of the testimony or credibility of the witnesses is an infringement of the legal rights of the accused on trial, made so by statute. Simmons v. State, 55 Texas Crim. Rep., 444; C. C. P., art. 787. It is not every comment, however, that requires reversal, for the reason that all comments are not harmful, and the question whether the judgment is to be reversed is determined not upon the language used in making the comment, or the fact that the comment is made, but upon the consequences which probably result therefrom.

State's counsel in motion for rehearing insist the case of Loan fiict with the original opinion rendered in this case. In the Loan case a State's witness on his direct examination who had given no material testimony favorable to either the State or the defendant, v. State, 69 Texas Crim. Rep., 221, 153 S. W. Rep., 305, is in conand who in answer to all material questions said "I don't know," and in answer to questions propounded to him by the court, which were framed in a manner not to suggest the answer, that he did not know, was fined by the court in the presence of the jury. Loan was on trial, reserved an exception, and asked for a reversal because of the conduct of the court. The case was affirmed. The

witness who was fined had said nothing to Loan's prejudice; nothing in his favor, and from a legal point of view it was manifestly a matter of indifference to him whether the witness was fined or not. If in the presence of the jury the court had pursued the same procedure that was pursued in the Loan case with reference to a witness who had given material testimony favorable to the accused, a different question would be presented, and very likely under such circumstances the trial court would not have punished the witness in the presence of the jury, but would have deferred the matter to a time that it might be done without prejudice to the case of the accused on trial.

The remark of the court quoted in Bankston v. State, 80 Texas Crim. Rep., 225, 189 S. W. Rep., 142, to the effect "I don't think you can establish it by her; she doesn't know which end she stands on" is referred to. In that opinion it is stated: "The bills are wholly insufficient to present the question for review." The court adds, however, that if the bills were perfect a reversal would not result from the making of the remark. Keeping in mind the principle that it is comments that may be harmful alone that result in reversals, we assume that the court in making the remark had in mind the record before it from which it appeared that no injury resulted. On the language used the case is certainly not more in point than that in Manning v. State, 37 Texas Crim. Rep., 184, where the court said: "We also believe the court committed an error when the defendant stated, in answer to a question by the State, that he had no recollection of the matter inquired about, and, on his repeating this answer, in stating, in the presence of the jury, that the witness refused to answer the question asked." But as stated above, the vice is not determined by the formula used by the court in expressing his comment, but by the result that may follow. The remarks of the court in the instant case, as we construe them, in connection with the matters developed in the bill and the record as disclosed, were calculated to prejudice the appellant's case by causing the jury to disregard testimony in his favor given by the witness Mooney. McPherson v. State, 79 Texas Crim. Rep., 93, 182 S. W. Rep., 1114; Pharr v. State, 7 Texas Crim. Rep., 473. We are, therefore, unable to form a conclusion coinciding with the views of State's counsel which have been urged with commendable zeal and marked ability.

The motion is overruled.

*Overruled.*