### BURRELL WARREN V. THE STATE.

No. 8091.    Decided March 5, 1924.

1.—Assault with Intent to Rape—Remarks by Court—Insanity.

Touching the subject of insanity this court is unable to conclude that the remarks of the court were not harmful, as they imputed bad faith to the witnesses for defendant and were calculated to impress the jury with the idea that the trial judge did not believe that the appellant was insane, and the judgment must, therefore, be reversed and the cause remanded.

2.—Same—Charge of Court—Acquittal.

The insistence of the appellant that the evidence of insanity was of a nature so conclusive as to render it incumbent upon the court to instruct an acquittal cannot be sustained. The controverting evidence is regarded as presenting an issue of fact touching the insanity of the accused at the time the offense was committed and at the time of his trial.

3.—Same—Remarks by Court—Practice in Trial Court.

The interposition of the court into the controversy, and the use of the language quoted does not appear from the record to have been at all necessary in deciding any question of law presented, and cannot be characterized other than as a comment by the court upon the evidence touching insanity, and the manner of counsel in introducing it and the witness in delivering it, and indicating the opinion of the court on the merits of the issue.

4.—Same—Evidence—Other Transactions—Intent.

Upon trial of assault with intent to rape there was no error in admitting testimony that a year or more before the commission of the offense, a white lady passed the place at which appellant and the witness were working, at which time the appellant said to his companion, "Don't the way women folks dress these days tempt you, it does me." This testimony bore upon the intent of defendant.

5.—Same—Delaying Trial—Preliminary Inquiry.

There was no error in refusal of the court to delay the trial pending an appeal from the verdict of the jury upon the preliminary inquiry into the sanity of appellant. Following Quesada v. State, 34 Texas Crim. Rep., 116.

Appeal from the Criminal District Court of Dallas.  Tried below before the Honorable Felix D. Robertson.

Appeal from a conviction of assault with intent to rape; penalty, forty years imprisonment in the penitentiary.

The opinion states the case.

*S. F. Rose* and *Albert Strawn,* for appellant.—Cited: Thurman v. State, 211 S. W. Rep., 785; Sarli v. State, 189 id., 149; Anderson v. State, 214 id., 353.

*Tom Garrard* and *Grover C. Morris,* Assistants Attorney General, and *Shelby S. Cox,* District Attorney, for the State.

MORROW, PRESIDING JUDGE.—Appellant was convicted of assault with intent to rape, his punishment being fixed at confinement in the penitentiary for a period of forty years.

The defense was insanity.  During the day in the center of the city of Lancaster, at a place where many people were within call, the appellant, a negro man, made an assault upon a white woman.  When persons attracted by her screams came to her aid the appellant protested against interference with his business.  Considering the time, place and nature of the assault, it is difficult to reconcile it with the act of a rational person.  On the issue of insanity many witnesses testified on behalf of appellant.  Among them were four doctors, including the city health officer.  Some time previous to the occasion of the offense appellant had been by a policeman of the city arrested and charged by affidavit with lunacy.  He was examined and treated by the city health officer, who testified upon the present trial to his examination and treatment and gave the opinion that the appellant's mind was unsound.  According to this witness and other doctors appellant was affected with a form of epilepsy called psychic epilepsy.  Attacks due to this malady were described and symptoms detailed.  Its nature was such as to produce delusions rendering the appellant incapable of controlling his acts, destroying his will and making him unaccountable for his conduct.  Similar symptoms had affected other members of the family.  There were apparently lucid intervals, but during them, according to the testimony, there were delusions and mental aberrations controlling the conduct of the subject.  Many non-expert witnesses testified to peculiarities of conduct upon which they based their conclusion that appellant was insane.  The officers who arrested the appellant and who had him in custody after the commission of the offense, described his conduct and gave the opinion therefrom that he was sane.  Some citizens in the community in which appellant lived and for whom he had on occasions done manual work, testified that they had observed nothing in his conduct leading

to the conclusion that he was insane. The superintendent of the school in the city in which appellant resided testified that the appellant had graduated at the public school and at the time had made an address; that witness had delivered a diploma to him, and afterwards had assented to his employment as a substitute teacher. No personal knowledge of the character of his conduct either as a student or teacher was asserted, but no adverse comments had been heard.

The witness, Effie Warren, mother of the appellant, was introduced by him upon the issue of insanity, and gave material testimony upon that subject. During her examination appellant's counsel propounded to her questions to which she gave somewhat unresponsive answers embracing some hearsay. He instructed her to refrain from repeating what others had told her. She changed the form of her answer, whereupon State's counsel interposed the complaint that she was repeating. The court then made some remarks against which objections were urged. In the bill of exceptions appellant set out the remarks in these words: "She knows enough not to hesitate to put the word crazy in every time she can. You have led the word out of this witness and out of the other witnesses as much as you possibly can on every occasion and have led the witnesses around by the nose and you can have your bill on that."

The court approved the bill, appending thereto the transcribed notes of the stenographer covering the transaction. From these the following quotations are taken: "Q. Now, Effie, do you remember an occasion any time after that of Burrel ever being in jail? A. They had him up here going to summer normal and Pauline phoned me that he was crazy. Q. Don't tell anything anybody told you; just what you know yourself. A. They sent for me, telephoned that he was crazy up here in jail. State's Counsel: Judge, are you going to let this witness sit there and repeat over and over again——Defendant's Counsel: That witness don't know how to testify as well as State's attorney does. The Court: She don't hesitate to put in the word crazy. Defendant's Counsel: We except to the court's remarkes in stating that the witness doesn't hesitate —— The Court: You may have your bill, and I will qualify it by saying that you have jerked that word crazy out of this witness and all other witnesses as much as you possibly could on every possible occasion. You may have your bill on that. Defendant's Counsel: We would like to have a bill of exceptions; we would like to have the stenographer get it. The Court: He has aready got it and you may have it. Defendant's Counsel: To the effect that she was led around by the nose so much. The Court: But you are not going to lead her around by the nose any more and you are going to conduct this examination in a proper way. I have been trying to give you as square a deal as I possibly could. Now proceed. You can have your bill."

In the statute it is said: "In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not, it is admissible; nor shall he, at any stage of the proceedings previous to the return of a verdict, make any remark calculated to convey to the jury his opinion of the case." (Art. 787, C. C. P.)

The insistence of the appellant that the evidence of insanity was of a nature so conclusive as to render it incumbent upon the court to instruct an acquital cannot be sustained. The controverting evidence is regarded as presenting an issue of fact, touching the sanity of the accused at the time the offense was committed and at the time of his trial. Considering the character of the evidence, however, touching the subject of insanity, we are unable to conclude that the remarks of the court which have been quoted were not harmful. They imputed bad faith to the witnesses for appellant and were calculated to impress the jury with the idea that the trial judge did not believe that the appellant was insane. Under the statute which has been quoted, the office of the judge in receiving evidence is to determine whether or not it was admissible. There seems, in the present case, to have been no objection made to the evidence. State's counsel appears to have taken the court to task for permitting the witness to repeat the statement that some one had 'phoned her that her son was in jail and was crazy. It was, however, proved without controversy that before the offense was committed, he had been put in jail and charged with lunacy upon a complaint made by a police officer. The interposition of the court into the controversy and the use of the language quoted does not appear from the record to have been at all necessary in deciding any question of law presented and cannot be characterized other than as a comment by the court upon the evidence touching the insantiy and the manner of counsel in introducing it and the witness in delivering it, and indicating the opinion of the court on the merits of the issue. It is not every unauthorized comment made by the judge upon the evidence which requires a reversal. It is always, however, violative of the statute mentioned, and has in many cases been held of such importance as to require a reversal of the judgment of conviction. Among them are Manning v. State, 37 Texas Crim. Rep., 180; House v. State, 42 Texas Crim. Rep., 125; Scott v. State, 72 Texas Crim. Rep., 26; English v. State, 85 Texas Crim. Rep., 457. The present record reflects nothing in the conduct of counsel which called for a reprimand. If, however, it is deemed by the court proper to reprimand counsel, it should not be done in the presence of the jury. Echols v. State, 170 S. W. Rep., 786.

A witness testified that a year or more before the commission of the offense herein a white lady passed the place at which appellant and

witness were working, at which time the appellant said to his companion, "Don't the way women folks dress these days tempt you? It does me." These remarks were somewhat remote but were not improperly received as bearing upon the intent of appellant and the state of his mind. The attack upon the prosecutrix went beyond the point of preparation and met the legal element of an assault with intent to rape.

There was no error in the refusal of the court to delay the trial, pending an appeal from the verdict of the jury upon the preliminary inquiry into the sanity of the appellant. Ex Parte Ewell Morris, . No. 8437, opinion handed down by this court January 9, 1924; Quesada v. State, 34 Texas Crim. Rep., 116.

Other matters revealed by the record are deemed not such as to demand discussion.

For the error pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*