JOHN MOORE, ALIAS JOHN NEAL, V. THE STATE.

*No. 413.    Decided May 5.*

1. **Assault with Intent to Murder—Intent—Charge.**—On a trial for assault with intent to murder, where the defense was that the shots were fired to alarm the assaulted party, and there was evidence supporting this theory, *Held*, it was error to charge the jury to acquit if they had a reasonable doubt whether defendant shot with the intention to scare or kill; first, because if the shot was fired with intent to scare or alarm the defendant would be guilty of aggravated assault, and defendant should not have been acquitted; and second, the court not having submitted aggravated assault to the jury, they were left alone to decide between acquittal and conviction of assault with intent to murder, where the facts raised the issue of the inferior degree of aggravated assault.

2. **Same—Aggravated Assault.**—On a trial for assault with intent to murder, where an assault with a deadly weapon is shown, but the specific intent to kill is not shown, the offense would be aggravated assault.

3. **Same—Evidence of Particular Instances to Show that Defendant was an Expert Pistol Shot.**—On a trial for assault with intent to murder, *Held*, that it was not error to refuse proffered evidence to the effect that the witness had seen defendant hit a small spot on a tree the second shot, at a distance of thirty steps.

4. **Same—Intent.**—On a trial for assault with intent to murder, as bearing upon the issue of intent, a defendant may show that he is an expert shot with a pistol.

5. **Practice—Remarks of Court in Ruling upon the Admission of Evidence.** The court should simply rule upon objections to the admission or rejection of testimony, without comment.

APPEAL from the District Court of Bell.    Tried below before Hon. W. A. BLACKBURN.

This appeal is from a conviction for assault with intent to murder, the punishment assessed being two years in the penitentiary.

The parties to the shooting are negroes.    The two theories pertaining to the occurrence are shown by the testimony of these two parties, Bent Clark and John Moore, most of which we reproduce, as follows:

Bent Clark testified: "On Sunday, the 21st day of August, 1892, I and my wife went to church.    Passed the road by Jim Church's. When we got to the church house the defendant was there.    I saw that he was armed with a pistol in his bosom.    The defendant saw me that afternoon at the church house.    I did not stay at the church very long

before I thought that I had better go home, as I was uneasy. So I went away, leaving my wife at preaching. The defendant knew the road to my house as well as any one, as he had lived with me. I did not know that defendant had left the church when I left to go home. I went on the road past Uncle Jim Church's house, and after I passed the house about ten steps I heard a pistol fire. I looked around and saw the defendant coming from Church's house after me with a pistol, and I threw my umbrella down and broke to run, and he shot at me again. I kept running, and he after me, and he shot at me again. I was running as fast as I could home, and he after me. My boy at home heard the shooting and came meeting me with my gun, a seven-shooting rifle. After defendant quit shooting he turned and ran towards the bottom. When I got my gun I shot at him, but he was 400 or 500 yards away. I did not see the defendant shoot. I had my back turned to him when he shot from Church's house. I saw him come out of the house after me with the 44 white-handle pistol, and as I ran he shot at me three times more. This was all in Bell County, Texas, on Sunday, the 21st day of August, 1892. On Saturday night before the shooting defendant got after me at church with his pistol, and run me home."

John Moore testified: "I am the defendant in this case. The day of the shooting I was at Uncle Jim Church's house about dinner time, sitting on the gallery. Bent Clark came by the house with an umbrella over him. Bent had been carrying a gun for sometime, and making his brags about what he would do if anybody bothered him. I thought I would shoot to scare him and make him run. I did not try to hit him. The first shot went about ten feet over his head, the second about ten feet to his right, and the last one I fired in the ground about five feet in front of me. I did not point the pistol at him, but pointed away over him the first time, and to his right the second time, and fired it in the ground the last time. I thought by scaring he would leave the country. He was all the time making trouble, and everybody wanted him to leave. I did not want to kill him, and if I had I would not have shot at him there before Uncle Jim's and so close to the church, where there were lots of people. If I had wanted to I could have hit him the first shot, as I am a good shot and was about thirty steps from him. I did not throw cotton on Bent Clark's house and try to burn it."

Most of the other witnesses, both white and black, gave Clark, the assaulted party, a bad reputation as a quarrelsome, overbearing, fussy man, who was not liked by any one in his neighborhood; and also a man whose reputation for truth in his neighborhood was bad. On the other hand, all these witnesses testified to the good character, for peace and veracity, of the defendant, John Moore. They all, with singular unanimity, said in substance of defendant: "John is a jolly, good-natured boy, and likes to joke and have his fun." This in connection

and explanation of John's running after Bent and shooting at him with his pistol.

*McMahon & McMahon,* for appellant.—1. We will consider the action of the court in sustaining the district attorney's objection to the witnesses offered by appellant to show he was a good shot with a pistol. The objection of the district attorney was that it was immaterial and irrelevant. This objection we contend is not well taken, and that the court erred to appellant's prejudice in sustaining it. This testimony, we are of opinion, comes clearly within the general rule that the evidence must correspond to the allegations and be confined to the issue. But we submit, that if it does not come within the general rule it comes within the exception to the general rule, which is, that when the knowledge, motive, or intent of a party is a material fact in issue, collateral facts tending to show the knowledge, motive, or intent of a party are admissible. In this case the specific intent to murder is the gist of the offense, and hence the appellant has the legal right to have every fact or circumstance, however weak, go to the jury, which will tend to explain his intention in assaulting Clark. Francis v. The State, 7 Texas Crim. App., 501; Marshall v. The State, 5 Texas Crim. App., 290; Persons v. The State, 3 Texas Crim. App., 243; Pridgen v. The State, 31 Texas, 425; Gilbraith v. The State, 41 Texas, 567; Cesure v. The State, 1 Texas Crim. App., 19; Heard v. The State, 9 Texas Crim. App., 26; Green v. The State, 12 Texas Crim. App., 58.

These decisions reaffirm the rule laid down by Mr. Greenleaf, who says: "Cases of this sort, therefore, instead of being exceptions to the rule, fall strictly within it." 1 Greenl. on Ev., sec. 53. Mr. Greenleaf further says: "It is not necessary, however, that the evidence should bear directly upon the issue. It is admissible if it tends to prove the issue, or constitutes a link in the chain of proof, although it might not justify a verdict in accordance with it." 1 Greenl. on Ev., sec. 51a.

In view of these decisions and the peculiar circumstances of this case, can this court say that the court below did not err in refusing to permit appellant to prove by these witnesses that he was a good shot with a pistol? We think not.

The theory of the State is, that appellant shot at Clark with the intention of killing him. The theory of the defense is, that appellant shot to scare Clark. It is clearly shown that three shots were fired by appellant. At the first shot appellant was thirty steps from Clark, at the second a short distance further, and the third about 100 yards from him. Clark was not hit. Then under these circumstances, would not the fact that appellant was an expert shot with a pistol be a circumstance in the chain of proof tending to show appellant did not intend to kill Clark? This circumstance would have corroborated the state-

ment of appellant and rendered it more probable. Why? Because if an expert shot, it would seem with the opportunity afforded him he would more than likely have struck Clark. This is nothing more than a logical conclusion. This circumstance being favorable to the theory of appellant, did he not have the right to have it placed before the jury for their consideration? This question has been answered in the affirmative by this court in an unbroken line of decisions. In addition to those heretofore cited, we wish to call the court's special attention to the following decisions: Pridgen v. The State, 31 Texas, 429; Myers v. The State, 24 Texas Crim. App., 341; Bowers v. The State, Id., 549.

2. Appellant's first bill of exceptions complains of the remarks of the court in the presence and hearing of the jury, when ruling upon the admissibility of the evidence offered by appellant to show he was an expert shot with a pistol. By reference to the statement of facts and this bill of exceptions it will be seen that appellant had proven by Fred Scott and Anderson Phillips that he was a good shot with a pistol. These witnesses had been permitted to testify without objection. After these witnesses had testified appellant offered other witneses to prove the same facts, when the district attorney objected, on the ground that the testimony was irrelevant and immaterial. In sustaining this objection the court made use of the following remarks: "It is too late now, but if you had objected in time I would have sustained your objection to the witnesses who testified as to the shots, for it has nothing to do with the case." To these remarks appellant's counsel excepted, because calculated to injure appellant before the jury. The court then made use of the following remarks: "The question as to whether the defendant was a good shot or not has nothing to do with the case. I don't care whether he could hit a spot on a tree or whether he could hit the man in the moon." Appellant's counsel also excepted to these remarks on the same ground. That the court erred in making use of these remarks there can be no question. "In ruling upon the admissibility of evidence the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it be admissible. Nor shall he at any stage of the proceedings, previous to the return of a verdict, make any remark calculated to convey to the jury his opinion of the case." Code Crim. Proc., art. 729; Moncallo v. The State, 12 Texas Crim. App., 171; Copeny v. The State, 10 Texas Crim. App., 473; Mavo v. The State, 7 Texas Crim. App., 343; Wilson v. The State, 17 Texas Crim. App., 525; Rodriguez v. The State, 23 Texas Crim. App., 503; Crook v. The State, 27 Texas Crim. App., 241.

It is true that this court has held that a violation of the above article will not require a reversal of the case where there is no injury to the defendant. Rodriguez v. The State, 23 Texas Crim. App., 507;

Copeny v. The State, 10 Texas Crim. App., 473; Wilson v. The State, 17 Texas Crim. App., 525.

But we submit the correct rule is laid down by Judge Wilson in Crook v. The State, 27 Texas Criminal Appeals, 241, where he says that it is material error when such remarks might prejudice the defendant. The case at bar differs from those cases where this court held the remarks of the trial court were not prejudicial to the defendant, because in those cases the evidence was not before the jury, or else its remarks were not upon the weight of the evidence or its bearing in the case. In this case the remarks of the court were directly upon the weight and bearing in the case of evidence already admitted, as well as its remarks upon the evidence offered by appellant to prove he was a good shot with a pistol. Then we contend that both the letter and spirit of this article have been violated to the prejudice of appellant. We think these remarks are objectionable on another ground, that they were calculated to convey to the jury the court's opinion of the case. From these remarks the jury may have concluded that the court did not believe appellant's defense, and therefore they were influenced in finding their verdict. "So jealous are the courts of the right of trial by jury in some of the States, particularly in criminal cases, that an expression of opinion thrown out by the judge in the hearing of the jury, while deciding a question of law in the case, has been held ground for reversing the judgment. For it is evident that the opinion of the judge can be as effectively conveyed to the jury by expressing it in their hearing while ruling upon what purports to be a question of law, as by imparting it in what purports to be a declaration of law framed for their guidance. It has been accordingly held that a judge has no more right to volunteer before the jury his opinion upon a material fact in controversy, while deciding a question of law on the trial, than he has to charge in respect to such fact. * * * Juries, particularly ignorant juries, watch with great eagerness any expression of opinion from the bench, and are very apt to follow it, whether it is given in the form of an instruction to them or whether it falls from the lips of the judge as a casual remark. Hence, in those courts where the province of the jury is jealously guarded, light or careless expressions of opinion upon the part of the judge which have a tendency to intimate to the jury his opinion of the evidence have sometimes been held grounds for reversing the judgment." Thomp. on Charging the Jury, secs. 53, 54.

If these remarks do not constitute material error, then it would seem that no remarks of the court while ruling upon the admissibility of testimony would constitute such error, and article 729 of the Code of Criminal Procedure is a nullity.

*R. L. Henry*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—The defendant requested the court to instruct the jury as follows: "You are further instructed, that defendant is charged with an assault with an intent to murder Bent Clark, and his defense is that he did not intend to kill the said Bent Clark, but shot to scare him. Now, if you believe from the evidence that defendant did shoot at Bent Clark, but have a reasonable doubt whether he shot to scare him or to kill him, you will acquit the defendant. The State must prove to your satisfaction, beyond a reasonable doubt, that the defendant shot at him with the intention of killing the said Bent Clark. No other intention is sufficient." This was refused, because given in the main charge, and the refusal was duly excepted to and a bill of exceptions reserved. The charge as given and that requested were erroneous—not applicable to the case nor authorized by the facts. If defendant shot at Clark only for the purpose of alarming him, the offense would be aggravated assault. McCullough v. The State, 24 Texas Crim. App., 129. He could not be acquitted on such evidence. The court did not submit the issue of aggravated assault to the jury. This may have caused the jury to assess the higher punishment of assault with intent to murder. While we would not disturb the verdict upon the facts, yet the jury were precluded from passing upon the mitigating fact in the case; that is, the want of intent to kill. If the specific intent to kill was wanting, the offense would be aggravated assault. They were left to decide between acquitting upon the one hand, and of convicting of an assault to murder on the other, when the facts raised the issue of an inferior degree of assault. It was clear defendant was guilty of assault, and they were thus forced to convict of the only grade submitted to them, to wit, assault with intent to murder. An honest jury could not acquit defendant of every grade of assault under the facts before us, for it is shown that defendant fired three shots at his fleeing enemy. This evidence was met by the testimony from the defendant that he had no intention of killing Clark, but only fired to alarm him, and that the shots were fired over his head and to one side, and not at him. Defendant proved by two witnesses that he was a good pistol shot, and by one witness that he saw him hit a small spot in a tree at thirty steps at the second shot. He offered to prove the same facts by other witnesses, as a circumstance tending to prove that he had not the specific intent to kill Clark. The court correctly excluded this proffered evidence, if it in fact was excluded. Hawkins v. The State, 17 Texas Crim. App., 595. Upon objection of the State, the court remarked: "It is too late now, but if you had objected in time I would sustain your objection to the witness who testified as to the shots, for it has nothing to do with the case." To this remark exception was also reserved. Whereupon the court further remarked to counsel: "The question as to whether the defendant is a good shot or not has nothing to do with the case. I don't care whether he could hit a

spot on a tree, or whether he could hit the man in the moon." This was excepted to also. In qualifying the bill, the court says he informed counsel that the defendant might prove that he was a good shot at men. This leaves the bill in rather a peculiar shape, and it is doubtful whether the evidence was, by the ruling of the court, withdrawn or left before the jury. While the testimony may have been of small probative force, yet we are of opinion that it should have gone to the jury for what it was worth, as bearing upon defendant's intent, unincumbered with the remarks of the court. The court should simply rule upon the objections to the admission or rejection of testimony without comment. Such is the spirit, and even letter, of the statute. Inquiry on appeal as to whether injury was caused by comments of the court in such state of case ought not to be a question for revision.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.