Robert S. McMahan, alias A. J. McDowell, v. The State.

No. 1015. Decided March 8, 1911.

1.—Bigamy—Evidence—Subsequent Marriage.

Upon trial of bigamy there was no error in admitting testimony of the county judge that he had performed the marriage ceremony in the subsequent marriage, as well as the original marriage license, and also testimony as to the presence of witnesses during said marriage ceremony.

2.—Same—Remarks by Judge—Weight of Evidence—Practice.

Where, upon trial of bigamy, in ruling upon certain testimony offered by the defense with reference to a divorce of defendant from his first wife, which testimony was first admitted and then withdrawn from the jury, the court while this testimony was being offered and discussed by the attorneys pro and con made remarks which implied that he did not believe the witnesses who testified, the same was reversible error

3.—Same—Change of Venue—Practice on Appeal.

See opinion with reference to testimony upon motion to change venue which might have probably been sufficient, but inasmuch as the same was not embodied in the bill of exceptions filed during the term at which defendant was convicted, the same can not be considered on appeal.

Appeal from the District Court of Scurry. Tried below before the Hon. Cullen C. Higgins.

Appeal from a conviction of bigamy; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Taylor & Rosser* and *Fritz R. Smith,* for appellant.—On question of remarks by judge: Harrell v. State, 39 Texas Crim. Rep., 204. Cases cited in opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of bigamy, his punishment being assessed at three years confinement in the penitentiary.

The State proved two marriages, one to Eula Smith and the other to Mrs. Willie V. McGraw. One marriage occurred in McLennan County along about 1885, and the other in February, 1910, in Scurry County. The State introduced copies of the two marriage licenses and their execution. The first marriage was solemnized by a minister and the second by a county judge.

1. During the trial the witness Eubank was permitted to testify that he attended the marriage of the defendant, Robert S. McMahan, alias A. J. McDowell, to Mrs. Willie V. McGraw, on the evening of the 18th day of February, 1910. Objection was urged to this because there was no allegation in the indictment in support of such testimony.

Another bill recites that the State was permitted to prove by the witness Buchanan, county judge of Scurry County, over the objection of defendant, that he performed the marriage ceremony between the defendant and Mrs. McGraw on the 18th day of February, 1910. The same objection was urged to the introduction of this testimony. This bill is qualified by the trial judge with this statement: "That the original license were introduced with the return thereon."

Another bill recites that the State, over the objection of the defendant, introduced in evidence the original marriage license of the defendant and Mrs. Willie V. McGraw, issued on the 18th day of February, 1910, together with the return of the county judge, C. R. Buchanan, showing that he united the parties mentioned in marriage on February 18, 1910. This was objected to because there was no allegation in the indictment upon which to base the testimony.

Another bill recites that Mrs. Minnie Gosnell was permitted to testify, over the objection of the defendant, that she saw the marriage ceremony between defendant, A. J. McDowell, and Mrs. Willie V. McGraw performed on the 18th day of February, 1910, and that defendant and his wife boarded at her hotel, and lived together as man and wife, and occupied the same room after the performance of said marriage ceremony. The same objection was urged to the introduction of this testimony as that stated in the previous bill.

We are of opinion there is no merit in these contentions. These matters were introduced to show the fact that a subsequent marriage occurred between appellant and Mrs. McGraw, and the fact that they lived together as man and wife. We think all of this testimony was admissible.

2. Appellant took the stand in his own behalf, and testified, among other things, that he obtained a divorce from his first wife in Arizona. He also introduced an affidavit purporting to be signed by the former clerk of the court in which it was stated that appellant had obtained a divorce, reciting the date, which was prior to his second marriage. The State, through its district attorney, interposed objection. The testimony was permitted to go to the jury with rather a sharp reprimand on the part of the court directed at the district attorney for not objecting earlier than he did, the objection coming, it would seem, upon a motion to exclude the testimony. The objection was overruled by the court, and the following colloquy occurred between the court and the district attorney: "District Attorney: This purports to be from the clerk of the court that rendered the decree and I object to it, your honor. The Court: I would

not entertain an objection after the State has sat there and without objection let it be read to the jury; you can't get this away from the jury, and the whole thing will be overruled. District Attorney: I ask that your honor exclude the testimony. The Court: The motion is overruled for the same reason. The Court: There being no objection, you can introduce anything. District Attorney: I objected and the court sustained me right at first and——. The Court: It has all been gone over again without objection."

Without repeating the remainder of this colloquy between the court and the district attorney, it was along the same line, when finally the court concluded with this statement: "The questions and the evidence are all before the jury—all that has been brought out— there is nothing excluded, since it is all reintroduced without objection, it is all before the jury, and, of course, it would not be right to exclude the first part and let the last part in, and it has all gone in without objection." Then the bill recites the redirect examination by Taylor, counsel for defendant: "Q. Would you, Mr. McDowell, have remarried if you had not had a divorce? A. No, sir, I would not. Cross-examination by district attorney: Q. Mr. McDowell, have you a decree of divorce in your pocket or about your person? A. No, sir, I have not. Q. Certified to by the clerk of the court in Arizona? A. No, sir; I got my divorce, but I got it misplaced. Q. What judge tried the case? A. I have forgotten his name. Q. What was the name of the clerk? A. Name of the clerk was Hill. Q. What were his initials? A. E. H. Q. If you can remember the name of the clerk why can't you remember the name of the judge? A. I might if I had charged my memory with it, but it is a very easy matter to get a divorce in Arizona. My lawyer's name was Thomas, and he just told me to give him $50 and he would get me a divorce, and I did so. Q. Didn't you testify in the case at all? A. I did, yes, sir. Q. Why didn't you bring your divorce in Texas where your wife lived? A. Well, I wanted a divorce then; I was thinking of getting married again then, but I didn't. Q. You thought about marrying this woman that you did marry? A. No, sir, I did not know this woman then. Q. You were figuring on marrying another woman? A. Yes, sir. Q. Where did she live then? A. She lived at Clifton, Arizona, at the same town that I lived in. Q. Why didn't you marry her? A. Well, we didn't agree later on. Q. You never married her? A. No, sir."

Quite a colloquy of this sort along the same line followed in questions by the district attorney and replies by the witness at the end of which the district attorney said to the court:

"One further objection, if the court will entertain it: I object to this affidavit here on the grounds that it reads this way (reads affidavit), because it lacks the certificate of a judge or of the Secretary of State that he was the clerk of that court, and he can not prove it by himself and I object to it on those grounds and ask that the court

exclude it. It is just an affidavit taken here in Texas and such proof can not be made that way and I object to it on those grounds." "By Taylor, counsel for defendant: He can't argue the facts set out in the affidavit as bearing upon its admissibility, but only upon the legal fact as to whether it is properly drawn.

By the court: The objection is well taken. to all of it, as far as that goes, and the only question with the court is, that the testimony although inadmissible entirely has all gone before the jury, and now it will have its influence on the minds of the jury, it is a matter you can hardly get away from the minds of the jury, they being human like anybody else. But go ahead with the cross-examination and I will take the matter under advisement."

Then followed the cross-examination by the district attorney: "You stated that after you got your divorce you still maintained your wife down there in McLennan County? A. Yes, sir, I sent her money. Q. What were you sending her money after you were divorced from her for? A. I felt it my duty to do so. Q. Did you tell her (wife at Waco) after you left here in spring that you wasn't divorced? A. No, sir; I told her then that I had been."

Thereupon the court made the following ruling:

"Gentlemen of the jury, referring to the tilt between court and counsel, you will not consider any matters in that connection with the trial of this case, as the court is human like the jury and prone to lose his temper and take it out on counsel, and you will not consider it as against either side of the case for any purpose. The motion of the State to strike out the evidence because it is not certified to under the hand of the clerk of the court according to statute of the State and the United States, is sustained by the court, and the testimony is withdrawn from your consideration; the testimony of the defendant to the effect that he had a divorce, as it has not been proven by documentary evidence as prescribed by law. The affidavit is also excluded from your consideration and is not a part of the evidence in the case."

Quite a number of objections were then urged by appellant, among others, that the remarks of the court were in the presence and hearing of the jury, and were, in effect, a comment upon the weight of the evidence; because it was a comment upon the probable effect of the testimony upon the minds of the jury; because it was prejudicial to the rights of the defendant, and calculated to prejudice his case in the eyes and the minds of the jury, and because such qualification as expressed in the language of the court in his ruling would not be proper subject matter for the charge of the court prepared in the case. These were all overruled, and the court qualifies the bill as follows:

"That the remarks of the court were addressed to counsel in the case and not to the jury, but when the court's attention was called to the matter the court withdrew the remarks from the jury and

instructed them explicitly to not consider the remarks of the court, the counsel for any purpose whatever."

Another bill recites that the court, after having excluded the testimony offered by defendant as set out in the previous bill, cross-examined the defendant himself, as follows: "Q. Mr. McDowell, what name did you obtain that divorce under? A. McMahan. Q. R. S. McMahan? A. Yes, sir. Q. That was the style and number of that suit? A. Yes, sir. Q. Against whom? A. Against E. M. McMahan, Eula M. McMahan. Q. That the style of the suit? A. Yes, sir. Q. E. M. McMahan? A. Yes, sir. Q. Know the number? A. No, sir, I have forgotten the number. Q. Did you send a citation to her in Texas? A. No, sir, I didn't. Q. What did you state to your counsel about her residence? A. I told him she lived in Texas; I told him she lived at Waco, and he said that we could get a divorce easier out there by publication, and there would not be any fighting to do over it. Q. You know where she lived? A. Yes, sir. Q. Did you make an affidavit that her residence was to you unknown to get a citation by publication? A. I do not know what I did; I got the lawyer to attend to that; I did just as he told me. Q. If he told you to make that affidavit, that you didn't know where she resided, you did that? A. I don't think that I did; I have no recollection of making that. Q. In other words, you say that you cited her by publication and that you never sent her any notice? A. No, sir. Q. You never sent her a copy of the petition? A. No, sir. Q. What ground did you sue upon? A. Why, I sued on mistreatment and cruelty. Q. You sued in the Federal Court, the Federal Court of the Third District of Arizona? A. Yes, sir. Q. You don't remember who the judge of that court was? A. No, sir. Q. Or whether he is still the judge of that court? A. No, sir; he may be, he could be, I don't know. Q. You are sure as to the town, Solomonsville, are you? A. Yes, sir. Q. That is where the court is held? A. Yes, sir. Q. And not at Clifton? A. No, sir; not there. Q. How far is it from Clifton? A. Some twenty miles, maybe thirty; twenty-five or thirty miles. Q. What are the initials of your lawyer Thomas? A. Why, C. B. or C. D. Thomas. Q. He lives at El Paso, Texas? A. Yes, sir. Q. Know his street number? A. No, sir. Q. See him when you were out there? A. No, sir; I heard he was there. Q. You go out there the other day? A. Yes, sir. I believe that is all."

On the following morning, it is further recited in the bill, the district attorney moved to exclude the testimony of the defendant relative to his securing a divorce, on the ground that the same was not the best evidence, and because a decree of divorce certified to by the clerk of the court was the best evidence, the motion including the testimony elicited by the court himself on the examination of the witness, defendant, as aforesaid, and the court then sustained the objection of the district attorney and withdrew said testimony from the consideration of the jury, over objection of the defendant. Then fol-

lows quite a number of exceptions, among others, that part of this testimony was elicited by the court himself, after having withdrawn similar testimony from the consideration of the jury at an earlier period in the trial; that his contention is strengthened by proceedings had at an earlier period in the trial wherein the court stated to the jury, referring to the admissibility of testimony: "It will have its influence on the minds of the jury, it is a matter you can hardly get away from the minds of the jury, they being human like anybody else." For the further reason that the court after having withdrawn the testimony of the defendant from the consideration of the jury, by his own questions in the presence of the jury, elicited from the defendant the same or similar testimony and at a later period withdrew the same and thereby revealed to the jury the court's feelings in the case, and prejudiced the minds of the jury against the rights of the defendant. For the further reason that this contention is further strengthened by the language used by the court in the following colloquy with the district attorney in the presence of the jury, at an earlier period in the trial, as follows:

"District Attorney: This purports to be from the clerk of the court that rendered the decree and I object to it, your honor—— The Court: I would not entertain an objection after the State has sat there and without objection let it be read to the jury, you can't get this away from the jury and the whole thing will be overruled. District Attorney: I ask that your honor exclude the testimony—— The Court: The motion is overruled for the same reason. There being no objection you can introduce anything. District Attorney: I objected and the court sustained me right at first and——. The Court: It has been gone over again without objection. District Attorney: I understood that he (Taylor) was doing it to get it in his bill of exceptions; that that was his purpose, and that he was not going further at all. I would like to explain that my understanding of it was that he merely was introducing this testimony to go into his bill of exceptions and not to go to the jury, that that was what it was for. The Court: It is before the jury and the jury understand it and the objection is overruled."

As the bill is somewhat lengthy, suffice it to state that this colloquy continued some time, and the court finally sustained the objections and excluded all the testimony. Our statute prohibits the trial judge from commenting on the testimony, or in any way by remark conveying to the jury his idea of the testimony. This is in consonance with the other rule of our procedure which confides alone to the jury the right to pass upon the weight of the evidence, and the credibility of the witnesses. It will be noticed from what has been quoted and stated with reference to the three bills of exception bearing on this question, that the court first rejected this testimony. Subsequently, it was permitted to go to the jury, and then withdrawn; and it is also shown that the court put the witness through a very rigid cross-

examination, the purport of which was to discredit him very much before the jury as a witness. It seems to be evident from the questions asked, and the manner of asking them in the catechism of the witness by the court, that the court did not believe the witness, and that he was conveying this fact strongly and cogently to the jury throughout his entire examination of the witness. This was a clear violation of the statute. While the court's ruling may have been correct in excluding the testimony, yet the manner in which the colloquies occurred, as set out in the bills of exception, and the pungent cross-examination of the defendant by the court, indicated clearly his view of the credibility of this witness and the weight to be given to his testimony. If the court had instructed the jury that in his opinion the witness was unworthy of credit, or that the witness was swearing falsely about it, it occurs to us he could not have more clearly indicated his views of the testimony to which his inquiries were directed, than was done in the manner of his examination of said witness. In our judgment it was a clear, if not direct, evasion of the statute, and a conveying of the court's views of the falsity of the defendant's testimony to the minds of the jury. If the testimony was not admissible, he should have promptly excluded it without any remarks about it conveying his views of the weight of it. Not only did he not do this, but he first excluded it, then admitted it, and then gave witness a searching, cogent, pungent examination, conveying his idea of the truthfulness of the witness, and after all this was out before the jury, excluded the whole matter. This may have had, and doubtless, did have a direct bearing upon the minds of the jury inasmuch as they did not give appellant the minimum punishment. See Code of Criminal Procedure, article 767; Simmons v. State, 55 Texas Crim. Rep., 441; Moore v. State, 33 Texas Crim. Rep., 306; Crook v. State, 27 Texas Crim. App., 199; Zysman v. State, 42 Texas Crim. Rep., 432, 60 S. W. Rep., 669; Chancey v. State, 50 Texas Crim. Rep., 85, 96 S. W. Rep., 12; Walling v. State, 59 Texas Crim. Rep., 279, 128 S. W. Rep., 624; McGee v. State, 37 Texas Crim. Rep., 668, 40 S. W. Rep., 967; Manning v. State, 37 Texas Crim. Rep., 180, 39 S. W. Rep., 118; Kirk v. State, 35 Texas Crim. Rep., 224, 32 S. W. Rep., 1045.

Thompson in his work on Charging a Jury, section 53, uses this language: "For it is evident that the opinion of the judge can be as effectively conveyed to the jury by expressing it in their hearing while ruling upon what purports to be a question of law as by imparting it in what purports to be a declaration of law framed for their guidance."

In Simmons v. State, supra, the writer of that opinion uses this language: "The trial judge is to the jury the lord's anointed. His language and his conduct have to them a special and peculiar weight. Literally in such matters his communications should be 'yea, yea, and nay, nay.'"

If the court did not convey to the jury his idea and his belief of the weight of this witness' testimony, and that in his judgment he was swearing falsely, it would be a difficult matter for the court to convey such an idea to a jury. We think for these reasons this judgment should be reversed.

3. There is another question urged strongly for reversal, to wit: the ruling of the court refusing the change of venue. We are of opinion that if this matter was presented so the court could consider it, the contention would be sound. We mention this in passing so that upon another trial if the motion to change the venue is urged, and the testimony should develop as it did upon the trial of this case, the appellant should be granted a change of venue. The reason for not considering it upon this appeal is found in the fact that the bill of exception was not filed until after the adjournment of the court. Under our statute, evidence adduced upon motion to change venue must be embodied in bill of exception, which bill must be filed during the term. This article of the Code of Criminal Procedure applies specially to this character of bill of exception and testimony. An order will not be held valid authorizing the filing of such matters after the adjournment of the court. The court adjourned on the 24th day of September. This bill of exception was not filed until the first day of October, the seventh day after court adjourned. While we are not authorized to reverse a case under this bill of exception, still we are of opinion that upon another trial if the facts develop in regard to this matter as they did upon this trial, this motion should be granted.

For the matters discussed with reference to the action of the court during the examination of the defendant as a witness the judgment is reversed and the cause is remanded.

*Reversed and remanded.*