### Walter Scott v. The State.

No. 2653.   Decided November 12, 1913.

**1.—Perjury—Indictment—Specific Questions.**

Where the indictment for perjury specifically alleged the questions propounded to the witness by the grand jury upon which the perjury was based, an objection that the same were too general was not sound, and the indictment was sufficient.   Following McDonough v. State, 47 Texas Crim. Rep., 227.   Overruling Meeks v. State, 32 Texas Crim. Rep., 420 and McMurtry v. State, 38 Texas Crim. Rep., 521.

**2.—Same—Evidence—Grand Jury.**

Where, upon trial of perjury, defendant was put upon notice of the fact that he was suspected by the grand jury of being implicated in certain games and knew that the same had been played and that he was a party thereto, there was no error in permitting a grand juror to testify that defendant's attention was called to these matters; although as a rule, such testimony would be inadmissible.

**3.—Same—Evidence—Allegation and Proof.**

Where the game of dice which formed the predicate for perjury was alleged to have occurred with the parties named on a certain time and place, it was inadmissible to admit testimony of another game not alleged in the indictment at a different time and place by different parties; especially, where the same was not limited by the court's charge.

**4.—Same—Evidence—Remarks by Judge—Recalcitrant Witnesses.**

When the trial court deems it necessary to punish recalcitrant witnesses, he should retire the jury so that they may not be affected injuriously to the cause of the accused, and the court should not express his opinion about the testimony of the witness, but should limit his ruling upon the rejection or admission of testimony without expressing his views about it, and a withdrawal of the matter from the jury of his conduct can not cure the error.   Following Deary v. State, 62 Texas Crim. Rep., 352, and other cases.

**5.—Same—Evidence—Other Transactions.**

Where, upon trial of perjury, the same was based upon the testimony of the defendant as to a certain game played with dice in a certain place at a certain time, it was error to admit testimony as to another game at a different time and place; especially, where such testimony was not limited in the court's charge.

**6.—Same—Charge of Court—Venue.**

Where, upon trial of perjury, there was some question as to the venue of the offense, the court should have submitted defendant's requested instructions thereon.

Appeal from the District Court of Hamilton.   Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of perjury; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*H. E. Trippet* and *Edison & Edison,* for appellant.—On question of permitting testimony of grand jurors as to knowledge of defendant of games played: Jones v. State, 30 Texas Crim. App., 426; Campbell v. State, 30 id., 645; Bennett v. State, 39 Texas Crim. Rep., 639; Denton v. State, 79 S. W. Rep., 560; Underwood v. State, 39 Texas Crim. Rep., 409.

On question of conduct of trial judge: Zysman v. State, 60 S. W. Rep., 669, and cases cited in opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of perjury, his punishment being assessed at two years confinement in the penitentiary.

The indictment is attacked because the questions asked by the grand jury of the witness were too general. The allegation is that appellant appeared before the grand jury, and was asked whether he had at any time within the last two years next preceding the second day of September, 1912, in Hamilton County, played at any game with dice upon which money was bet and whether he had seen any game played with dice upon which money was bet in Hamilton County, Texas, within the last two years; and in reply he testified that he had not played at any game played with dice upon which money was bet in Hamilton County within the last two years, and had not seen any person or persons play at any game played with dice upon which money was bet in Hamilton County at said time. The traverse is that appellant well knew that he had played and did in Hamilton County and State of Texas on or about the first day of May, 1912, play at a game played with dice commonly called craps and upon which money was bet, and especially had the said Walter Scott played at a game played with dice commonly called craps and upon which money was bet and with Billy Cole, Billy Rhoades, Vernon Smith and other persons in Hamilton County within two years next preceding the said second day of September, 1912, to wit: on or about the first day of May, 1912, which said statement, etc., was false, etc.

Appellant says the indictment is insufficient because the questions are too general, and not sufficient even as a predicate for impeachment. In support of his proposition he cites Meeks v. State, 32 Texas Crim. Rep., 420, and McMurtry v. State, 38 Texas Crim. Rep., 521. In McDonough v. State, 47 Texas Crim. Rep., 227, upon the point insisted upon by appellant, the Meeks and McMurtry cases were overruled or qualified in such manner as to hold them no longer authority for the proposition asserted by appellant. The McDonough case has been followed on this particular question. See McDonough v. State, supra. We hold, there-

fore, in this respect, the position of appellant is not sound, and the indictment is sufficient.

By a bill of exceptions it is made to appear that Smith, foreman of the grand jury, was permitted to testify as follows: "We (the grand jury) had pretty positive evidence that there was gambling going on, and the same evidence that he was implicated in it. We informed the defendant of this fact. We informed him the second time that we had pretty positive evidence, or positive evidence that he was in the gambling or knew of it." Objection was urged to this because it was but the opinion and conclusion of the witness that the defendant was guilty, and it was also getting before the jury the opinion of the witness and also of the other grand jurors the opinion of said witness and said grand jurors that the defendant while a witness before the grand jury had testified falsely about the matter for which he was indicted. The bill is qualified in this way: "As is shown in the bill the grand jury informed the defendant of the facts that had come to its knowledge and put him in possession of the facts that had come to the grand jury's knowledge as they had come to the grand jury, as is shown on page 3 of the statement of facts. For this reason and the further reason that I regarded the evidence as a part of the res gestae, I admitted the testimony. With this explanation the bill will be allowed and is ordered filed and made a part of the record." This is signed by the judge.

The statement of facts, to which reference is made by the judge, shows this: "We had Scott subpoenaed before the grand jury in regard to reports of gambling that had been reported over there and on his first examination he said he had not been implicated in gambling and had not since he had returned from the navy and he said something about that he had tried to reform and we had pretty positive evidence that there was gambling going on and the same evidence that he was implicated in it. (Objects to this last statement and sustained.) We informed the defendant of this fact. We informed him the second time that we had pretty positive evidence, or positive evidence possibly that he was in the gambling or knew of it and we warned him and took particular pains to warn him, in fact; he was our town boy. I told him it was reported and we had positive evidence or pretty positive evidence that he was implicated and knew of gambling and was implicated in it and I told him that I would be glad if he would 'come clean' in the matter in order to save any further trouble. He was before the grand jury twice the same evening I think. May be once the next morning. We told him to go out and try to refresh his memory and see if he could not recall things in regard to gambling, if he did not know of gambling and if he had not been implicated in games and to go out and study over the matter before signing the statement. He did so retire and then came back again. I could not tell how long intervened from the time he retired until he returned but it was something like an hour or two. When he returned the second time he was again warned and cautioned by myself and the county attorney about like he was the

first time. The second time he came in there he was warned as I stated
and when we told him that we had positive evidence that there was
gambling going on over there and that he knew about it and that he had
been implicated in it and that we would be glad if he would make
a clean breast of the matter, and then he signed this statement the last
time." Under ordinary circumstances this character of testimony would
be inadmissible, but appellant in this case was put upon notice of the
fact that he was suspected of being implicated in the games and knew
of the fact that the games had been played, and he was a party to
them, and we are of the opinion it was not error for them to testify
they called his attention to these matters. It bore upon the question
of whether his testimony before the jury was deliberate and tended
to show that it was not under agitation or mistake or failure of
memory. Usually this character of testimony is not admissible, but
under the peculiar circumstances surrounding this matter as it occurred
in the grand jury room, we are of opinion that the court did not err
in admitting it.

Another bill recites that Vernon Smith was a witness for the State,
and after he had testified in reference to the game of dice alleged in
the indictment, the court permitted said witness to testify that he played
dice with the defendant on which money was bet, about the 1st day of
August of last year at the compress in the town of Hico, Hamilton
County, the defendant's objection being that there was no allegation in
the indictment in reference to that game, the game alleged in the
indictment being the one played about the first of May in which Billy
Cole, Billy Rhoades, Vernon Smith and the defendant were engaged.
These objections were overruled by the court. The court was also asked
to instruct the jury that they could not convict the defendant upon
proof of any game except the one alleged in the indictment, which the
court refused to do. We are of opinion this testimony was inadmissible,
but inasmuch as it had been admitted the court should have instructed
the jury as requested by appellant. The game or playing which formed
the predicate for perjury is alleged to have occurred with the parties
named about the first day of May at a different place and somewhere
outside of the town of Hico from a mile to three miles. The game
here inquired about was in August in the town of Hico at a compress.
The judge qualifies this by saying he did not regard the date as of the
essence of the matter, and would have admitted proof of any game in
Hamilton County played with the parties named on any date within
two years before the defendant testified. The indictment charging
perjury, and the State having selected the particular transaction about
which the perjury was committed and which formed the basis of it,
it would be bound to adhere to it, and besides there is nothing here to
indicate that the game played in August was between the same parties,
at least it is not so shown by the bill of exceptions or the qualification
of the judge. He does recite Vernon Smith, the witness, was in both

games, but that would indicate the other parties were not in the August game.

Another bill recites that while Billy Cole was on the stand and being interrogated by the district attorney, he was asked how far it was from the town of Hico to the place the game was played, and the witness said he did not know the distance; that it was in the night time and he did not know how far it was, and after the district attorney asked the witness several leading questions and he still testified that he did not know the distance, the court stated, in the presence and hearing of the jury, "It occurs to me, gentlemen, that this is an effort to evade the truth," and then stated to said witness, "Unless you give more definite answers, I am going to punish you. We can not be brow-beaten around in such way as this." The appellant attempted to except to the remarks of the court, and the court stated, "I will give you any exception you want, but I am not going to have the witness interfered with." To all this matter defendant reserved exception for the reason the statement and remarks of the court were error and highly prejudicial to the defendant in that the statement conveyed to the jury the opinion of the court that the witness was testifying falsely, and was a comment upon the weight of the evidence and the credibility of the witness, and was tantamount to the expression of the opinion of the court to the jury that the game of dice was played in Hamilton County and that the witness knew such fact; and the statement, "I will give you any exception you want, but I am not going to have the witness interfered with," was an intimation to the jury that the defendant or his counsel was in some way responsible for the false testimony of the witness, and the statement of the court was calculated to and did influence and intimidate the witness, as said witness after the statement by the court testified that the game was played in Hamilton County, and he located the place on the plat or map exhibited to him showing that the game was played in Hamilton County, he having before that time repeatedly said that he did not know the place where the game was played and could not locate it on the map presented to him. The court qualifies this bill, or explains it rather, by stating that "the witness was unfriendly to the State and displayed a spirit of stubbornness and reluctance to testify to anything definite and specific, although his testimony before the grand jury was definite and specific as to the place where the game of dice was played and this testimony was presented to him to refresh his memory. The witness evaded the State's questions as to where the game was played and refused to point out the place on a plat with which he was familiar. He was clearly testifying in a way which, if permitted, would make the courts a farce and mockery, and I regret that the necessity arose for me to reprimand him as I did. If the court has not the power to compel witnesses to tell the truth and it is error to do so it is more the court's misfortune than fault. However, I instructed the jury to dismiss what the court said to the witness from their minds and not to regard it as any comment on his credibility, and withdrew the occurrence

from the jury and charged them to not consider it in any way against the defendant. I did not intend to reflect on counsel who made the objection. I cheerfully testify to their high character and uniform courtesy to the court and regret that the court's action was construed by them as a reflection. I disclaim any such purpose. Furthermore, the witness was a State's witness, and defendant's attorneys made use of the incident referred to in the bill in argument as one going to weaken the weight to be given to the testimony and in that way turned it to advantage before the jury. With this explanation the bill is allowed."

The following bill will be considered in connection with the one just mentioned. Tom Woods was a State's witness in this bill, and after he had testified that the game of dice was played up the Bosque river about three miles from the town of Hico, the district attorney read, from a statement in writing that the district attorney claimed was the statement of the witness before the grand jury, to the witness that the witness had testified before the grand jury that the game was played at a place about a mile from Hico, and the examination of said witness then proceeded as follows:

"Q.  Is that statement true or false?  A.  I could not say whether it was about a mile or how far it was.

Q.  You made this statement, 'This was up the river about a mile from Hico'?  A.  Yes, sir.

Q.  Is that statement true or false?  A.  I guess it is true or I wouldn't have signed it.

Q.  You made another statement, 'It was a little further up the river than the slaughter pen'; is that true or false?  A.  I thought it the same way as the other.

The court to the witness:  Do you know whether it is true or false?  A.  Yes, sir; I guess it is."

The witness was then asked to put a mark on the map as best he could, where the game was played, and witness said he couldn't do it. Then the court said to the witness: "If you don't indicate where in your best judgment it was, I am going to punish you. Mr. Sheriff, take this man and put him in jail. I have fooled with him as long as I am going to," and the sheriff took the witness from the stand and took him to the jail. Afterwards, in about an hour, the sheriff brought the witness back and the district attorney talked to him and placed him on the stand. He then testified that the place where the game was played was in Hamilton County and located the place on the map satisfactorily to the district attorney. Defendant excepted because the action and statement of the court was the expression of the court's opinion that the game of dice was played in Hamilton County, and that the witness knew it and the witness was attempting corruptly to testify falsely, and was an intimation on the part of the court that the defendant was guilty, and the action of the court was calculated to intimidate the witness and to influence him to testify that he knew where the game

was played and that it was played in Hamilton County, whether said witness knew said fact or not, the testimony showing on the trial of the case that the Hamilton and Erath County line was all the way from a mile and a half to three miles from the town of Hico, and the witness testifying the game was played at night and that they did not really know how far it was from Hico, and they placed the distance all of the way from a mile to three miles from Hico. This bill is signed with the same qualification as the preceding bill.

The exceptions reserved to the remarks of the court under the circumstances are well taken. This matter has been frequently before courts of last resort, and has become the subject of reversals in a number of cases. For collation of authorities see Mr. Branch's Crim. Law., sec. 363; also Deary v. State, 62 Texas Crim. Rep., 352; Drake v. State, 65 Texas Crim. Rep., 282, 143 S. W. Rep., 1157; McMahon v. State, 61 Texas Crim. Rep., 489. In the latter case there is a great number of authorities collated, and the matter is gone into at some length. This particular portion of the opinion will be found on page 495. If the court shall deem it necessary at any time to punish recalcitrant witnesses he should retire the jury so that they may not be affected injuriously to the cause of the accused. The statute, art. 787, Revised Code of Criminal Procedure, interdicts the court expressing his opinion about testimony and limits him to ruling upon its rejection or admission without expressing his views about it. These bills clearly indicate that the court believed the witness was evading the truth and telling a falsehood, or may be committing perjury; he believed it so strongly that he sent one of the witnesses to jail, and the bill recites after he came from jail he then proceeded to testify satisfactorily to the district attorney. This matter was not cured by the action of the court withdrawing the matter from the jury. The court is not rendered powerless to protect itself, or in the due administration of justice, or in protecting the dignity of the court against its officers or the witnesses, but in the enforcement of his authority and the upholding of the dignity of his court he must not jeopardize the rights of the defendant as in this case was done by his comments before the jury and his action in the matter generally. If the court deemed it necessary to act as he did act at the time he should have retired the jury and inflicted such punishment or taken such course as he saw proper and necessary to bring about the ends of justice.

Another bill recites that Robert Sawyer, over appellant's objection, was permitted to testify that he saw the defendant, Henry Rodgers and Tom Woods playing dice on which money was bet in a box car in the town of Hico, Hamilton County, and at a place other than that alleged in the indictment. The same may be said of this as was said with reference to the game played at the compress in Hico on the first of August. Upon another trial this testimony will not be permitted to go to the jury.

We are of opinion the court should have restricted the consideration

of the jury to the game played about the first of May as set out in the indictment, and should have guarded the jury against convicting defendant on either of the other occasions mentioned, in which some of the witnesses swear they played with him. This matter, however, is deemed not necessary to be discussed further, and we make the above statement, as this testimony will not be admitted upon another trial. In the trial of the case, however, under this record, appellant's rights should have been guarded at this point against conviction under those matters.

Appellant asked another instruction which we believe ought to have been given, to wit: unless the jury found that the offense was committed in Hamilton County appellant should be acquitted. There was doubt left from the testimony as to whether the game was played in Hamilton or Erath County. It being an issue in the case, the matter should have been submitted specifically by the charge. The court did in a general way instruct the jury that if they should believe that the game was played in Hamilton County and the other matters concurring, they should convict, but where the issue is made as in this case a general charge of that sort is not sufficient, especially when the appellant requested it be specifically charged. If the jury should have found from the evidence that the game was not played in Hamilton County, it would have been their duty to have acquitted. The grand jury of Hamilton County would have no authority to examine into a case of gambling unless the gaming had occurred in Hamilton County.

There are some other matters suggested for review but we think enough has been said without taking up each item specifically. The court will understand from what has been said that the matters that are connected with those discussed will take the same course as those already reviewed.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*