### HARVEY HUGHES v. THE STATE.

#### No. 4548.   Decided June 20, 1917.

1.—Murder—Conduct and Remarks by the Judge.

Where, upon trial of murder, after defendant's witness had testified to his theory of the case, and at the termination of his examination and cross-examination, the court beckoned to the deputy sheriff, and after a short whispered conversation the deputy sheriff took the witness from the presence and in front of the jury and carried him to jail, which was within a few feet of the jury, the same was reversible error. Following Kirk v. State, 35 Texas Crim. Rep., 224, and other cases. Prendergast, Judge, dissenting.

2.—Same—Jury and Jury Law—Remarks by Judge.

Where, upon trial of murder, the jury had several times returned into the court and reported that they could not agree, and upon inquiry of the judge stated that they stood 11 to 1, whereupon the court remarked, "Gentlemen, it seems that you are practically agreed. I will have to send you out again. I will not be authorized to discharge you," etc., the same was reversible error. Prendergast, Judge, dissenting.

Appeal from the District Court of Wichita. Tried below before the Hon. Wm. N. Bonner.

Appeal from a conviction of murder; penalty, twelve years and six months imprisonment in the penitentiary.

The opinion states the case.

*Martin & Oneal,* for appellant.—On question of remarks of judge: Simmons v. State, 117 S. W. Rep., 141, and cases cited in opinion.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of remarks by judge: Grant v. State, 148 S. W. Rep., 760.

On question of bills of exception: Berg v. State, 64 Texas Crim. Rep., 612; Ryan v. State, 64 id., 628; Byrd v. State, 69 id., 35; Berry v. State, 163 S. W. Rep., 964; Hill v. State, 173 S. W. Rep., 1022.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder, his punishment being assessed at twelve years and six months confinement in the penitentiary.

There were two theories by the facts: The State's contention is that the deceased was in the negro apartment of a saloon taking a drink and appellant came in and suddenly stabbed him in the heart and killed him. There had been differences between them, and deceased had made threats to take the life of appellant. Appellant's theory of the case was that deceased was standing at the bar with an opened knife in his hand and when he entered the room deceased undertook to cut him; that he ran out of the door, followed by deceased, until they ran for some distance, when he turned upon the deceased with his knife and inflicted one blow which killed him. The details of the testimony are unnecessary so far as the disposition of the appeal is concerned.

After appellant's witness Wilson had testified to appellant's theory of the case, and at the termination of his examination and cross-

examination, the court beckoned to the deputy sheriff, and after a short whispered conversation the deputy sheriff took the witness from the presence and in front of the jury and carried him to jail. The jail was immediately behind and in a few feet of where the jury was sitting. While the bill is quite lengthy, repeating the testimony by questions and answers in order to develop fully the matters, this is the substance of the bill, but we will state a little more of this bill of exceptions: The witness testified at length controverting the State's theory that appellant killed deceased by stabbing him in front of the bar in the saloon. The witness was a bartender, and testified that he waited on deceased and three others, serving each with a glass of beer; that he went into what he called the "stock room" adjoining the saloon for supplies for the bar, and just as he entered this room he heard a noise as if of the breaking of glass, looked up and saw the deceased running out of the door with his knife in his hand. The effect of his testimony was that he was chasing appellant, appellant having just passed out of the door, and such is the theory of the defense as shown by his testimony. He also stated when deceased came in the bar prior to appellant he had an opened knife in his hand and was standing at the bar, and just as he, witness, went out appellant came in and deceased followed him out of the saloon, appellant being in front and deceased following and running. This was very important testimony to the defendant and materially contradicted the State's case. While the court did not directly comment upon the testimony of this witness, yet what he did was equally as effective as if he had said to the jury, "This witness committed perjury, swore falsely. Mr. Sheriff take him to jail." He said nothing in front of the jury about the witness, but immediately upon cessation of the witness' testimony had the deputy sheriff to arrest and put him in jail. This was error, and of such a nature it requires a reversal of the judgment. See arts. 735 and 787, C. C. P. Bearing upon this question we cite the following cases: Kirk v. State, 35 Texas Crim. Rep., 224, 32 S. W. Rep., 1045; Lawson v. State, 32 S. W. Rep., 895; Zysman v. State, 60 S. W. Rep., 669; Drake v. State, 65 Texas Crim. Rep., 282, 143 S. W. Rep., 1160; Scott v. State, 72 Texas Crim. Rep., 26, 160 S. W. Rep., 960; Caruth v. State, 77 Texas Crim. Rep., 150, 177 S. W. Rep., 973; McMahan v. State, 61 Texas Crim. Rep., 489, 135 S. W. Rep., 558; Simmons v. State, 55 Texas Crim. Rep., 441, 117 S. W. Rep., 141; Moore v. State, 33 Texas Crim. Rep., 306, 26 S. W. Rep., 403.

Exemplifying the above, attention is called to the affidavits of two of the jurors, Van Horn and Hayworth. Van Horn stated in his affidavit attached to the motion for new trial that when the jury retired to consider their verdict on the first ballot on the question of guilt the jury voted eight to four. This was on the night of the 13th of February that they began their deliberations on the case, and a verdict was not reached that night; and the next day while they were considering the case several of the jurors began discussing and argu-

ing with affiant that the negro witness Wilson was locked up in jail by the court for lying while he was testifying as a witness for defendant. Several of the jurors then said that the court had the witness Wilson locked up in jail because he was sitting there lying to the jury. The other jurors argued with the affiant before he agreed to vote the de- fendant guilty   He further states he did not know at the time Wilson had been ordered arrested and locked up by the court until the other jurors had so informed him while they were deliberating on the case. On the 14th of February when the jury came into court and reported that the jury could not agree the jury stood 11 to 1 for conviction; that at this time affiant had not agreed to convict the defendant unless it be for manslaughter, and all the other jurors refused to come lower than murder.

Hayworth stated that he was a juror in the case, and that the jury when they retired stood eight for guilty and four for not guilty, and he was one of the jurors who voted not guilty at first. He says the jury retired to consider their verdict about 6:30 o'clock in the evening of the 13th and the next day one of the jurors told affiant that the sheriff had locked up the witness Wilson. "He said to me, that negro was lying, didn't you see the sheriff take him and lock him up?"

There was no contest with reference to this matter in the motion for new trial, and the court passed upon the motion as presented with these affidavits attached as exhibits. It is unnecessary to discuss this. Viewed in the light of what has been said and what these jurors have stated in these affidavits, uncontradicted and uncontested, will show the result of the action of the court in having defendant's witness Wilson locked up in jail.

Bill No. 3 recites that the jury after retiring at 6:30 p. m. February 13, 1917, came into court February 14, at 1:30 p. m. and reported they had not reached a verdict and did not think it possible for them to do so, and requested they be discharged. The court asked how they stood, and was informed eleven to one. He asked if they were divided on the question of guilt. The foreman replied they had all agreed upon the question of guilt. Whereupon the court said to the jury: "Gentlemen, I congratulate you upon the progress you have made, it is rather a long case and it is but natural that it should take some time. I can not now discharge you. You may retire to your room." Excep- tion was reserved to this for various and sundry reasons.

The other bill, No. 4, recites that after the jury had retired at 6:30 p. m. February 13, 1917, to consider their verdict, and had reported to the court at 1:30 p. m. February 14th that they were unable to reach a verdict, and had been by the court ordered to further deliberate upon the cause, that the jury again reported to the court at 11 o'clock a. m. February 15th, after they had been deliberating for forty hours, that they were unable to reach a verdict, and asked that they be discharged for the reason they did not believe that they could reach a verdict; whereupon the court again asked the jury how they stood, and the

foreman replied that they stood eleven to one. The court then said to the jury: "Gentlemen, it seems that you are practically agreed. I will have to send you out again. I would not be authorized under the law to discharge you just yet." The court then sent the jury back to their room for further consideration. To this action of the court, and especially to the language used, "Gentlemen, you are practically agreed, I will have to send you out again," appellant excepted for the reason it was highly improper and prejudicial to his rights, etc. This is a matter that ought not to have occurred. This character of conduct by the court is not justified by our law. It is deemed unnecessary to discuss it. It is clearly erroneous and prejudicial.

For the errors indicated this judgment will be reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE, dissenting.