### JOHN CLAY v. THE STATE.

#### No. 1648. Decided May 17, 1899.

**1. Accomplice Testimony—Corroboration of.**

An accomplice who has testified can not be corroborated by proving statements which the said accomplice has made to a third party in the absence of the party against whom he is testifying.

**2. Same—Where Supposed Accomplice Is a Detective—Charge of Court.**

Where, upon the issue as to whether a certain witness was an accomplice or a detective, it was permissible to allow the sheriff to testify to such facts as would show he was a detective and not an accomplice, but in such case it was the duty of the court, in the charge, to limit the testimony to the special purpose for which it was admitted.

**3. Same.**

If a party is acting as a detective, ordinarily he would not be guilty as an accomplice.

**4. Theft of Horses—Hearsay—Res Inter Alios.**

On a trial for horse-theft, testimony that, after defendant's arrest, and in his absence the sheriff came and took the horses away that defendant had left with the witness, is hearsay, res inter alios acta, and inadmissible. It was not permissible to prove what became of the horses after the defendant's arrest.

**5. Same.**

On a trial for horse-theft, it was not error to permit a witness to testify to the simple fact of defendant's coming and waking him up, whereupon he went to the jail and waked two deputy sheriffs, notified them of defendant's whereabouts, and that they then went to where defendant was arrested.

**6.　Continuance.**

　An application for continuance will be held properly refused where, in the light of the other evidence in the record, the absent testimony would not probably be true.

**7.　Accomplice—Charge Submitting Issue of to Jury.**

　It is proper for the court to submit the issue of accomplice to the jury.

　APPEAL from the Criminal District Court of Dallas.　Tried below before Hon. CHARLES F. CLINT.

　Appeal from a conviction for theft of horses; penalty, two years imprisonment in the penitentiary.

　Appellant was charged with stealing two horses from Eliza Johnson. The principal prosecuting witness was one Hugh Chamberlain.　Chamberlain testified, that on the date charged in the indictment the defendant brought to his stable in Dallas, somewhere about 6 o'clock in the morning, six head of horses, two of which were the horses the defendant was charged with stealing.　Said Chamberlain further testified, over the objection of defendant, that about six weeks before this time, appellant came to him and wanted to bring him in some stray horses and get him to dispose of them, and that he had four in number that he wanted to bring.　That witness told appellant that he would take said horses and dispose of them.　That appellant did not bring the horses in, but later came in and told witness that he could bring horses in, and wanted to know if witness could carry them off soon, and witness told him on the following Sunday, and witness told appellant that he could meet him at Mesquite with the stray horses and he would carry them off.　Witness did go through Mesquite with his bunch of horses, but appellant did not meet him, but that on the first Monday of March, 1898, appellant came to witness again and told him that he could bring him in those horses, and that witness told him to bring them in that night and he could drive them away next morning.　That witness told to Sheriff Cabell each of these conversations, and Sheriff Cabell told him to go ahead and buy appellant's horses and keep him posted, and he would see that witness lost nothing through the transaction.　That on said first Monday of March witness says that appellant agreed to deliver him only four stray horses for his two horses, but when he arrived with the horses he had six, and offered all of them to witness for two of his horses.　Witness claims that he was in bed at the time they came, and that appellant came and woke him up, and witness told him to go back and meet him at his stable.　In the meantime witness went to the jail and woke up two officers, and witness came and met appellant in the stable, and appellant told witness that he should have to dispose of some of the horses and get rid of them as soon as possible, and that two deputy sheriffs walked up and arrested appellant.　Two deputy sheriffs testified to the same facts of arrest as witness Chamberlain, who woke them up.

　One Everett Hill testified, for the State, that two men drove the horses up to said stable about said time of night, and one of them was appellant, who opened the gate, let the horses in, and asked where Chamberlain was.

Witness told him he was up at town, and he went up to town. Witness did not know the other man, and as soon as the horses were turned in said man rode away.

Sheriff Cabell, witness for the State, testified to the various conversations that Chamberlain had had with the appellant before the theft of the horses, and had received a telephone message from the jail that night.

Appellant proved by several witnesses (and the State's witnesses showed the same fact), that the horses ran on a range near Letot, twelve or fourteen miles from the city of Dallas. Appellant proved by several witnesses that he was in the city of Dallas up to 4 o'clock, and could not, between the time he was seen in Dallas and the time the horses were delivered at Chamberlain's yard, have gone out to where said horses ran and have stolen same and driven them back to town. Appellant also testified that witness Chamberlain, on the evening of the first Monday in March, employed him to help him drive a bunch of horses away from Dallas, and to start with them soon the next morning. The contract of employment was also proven by a disinterested witness by the name of John Bond. Chamberlain instructed him to be down early next morning with his horse, so that they could get a soon start, and he came down soon and stopped and took a drink at a saloon, and a certain person came up to him and asked where he could find Chamberlain. That appellant told said person that he would go with him to Chamberlain's house, or, rather, where Chamberlain slept, and they would wake him up, which they did. That when appellant woke Chamberlain up, Chamberlain told appellant to go with this person and show him the way with his horses to Chamberlain's stable. That appellant went with said person, returned with him, and put the horses in his stable and went up in town and met Chamberlain, and came back with him to the yard, and was discussing the ages and points of the horses when he was arrested. That he did not steal the horses and had no connection with the stolen horses further than above shown, and did not know they were stolen.

*Hudson & Woody*, for appellant.

*Robt. A. John*, Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of horse theft, and his punishment assessed at confinement in the penitentiary for a term of two years; and he appeals.

On the trial the witness Hugh Chamberlain was permitted to testify, over the objections of appellant: That about six weeks before appellant was arrested he came to witness, and told him that he had some stray horses out on the range that he wanted to let witness have, and asked him if he could use them, and he told appellant he could; and appellant arranged with witness to meet witness at Mesquite with the horses the following Sunday, but did not do it. That afterwards appellant came to witness and informed witness that he did not get off with the horses

as he expected, and wanted to know of witness when he was going with another bunch, and witness told him he was going that week. Thereupon appellant said he would go out and get the horses and bring them in the next morning. Witness notified Sheriff Ben Cabell of this fact. Thereupon the witness details what he told Sheriff Cabell. Then the State, over the objections of appellant, was permitted to prove the same facts, in substance, as detailed by the witness Harry Chamberlain,—by Sheriff Cabell. Without reviewing all the facts detailed by the sheriff to the jury, we think it sufficient to say that an accomplice can not be corroborated by proving statements that said accomplice made in the absence of the party against whom he is testifying. While it was proper to permit the witness Chamberlain to testify as to all that appellant told him about bringing in the horses, it certainly was not permissible for the witness Chamberlain to testify as to all the facts that he detailed to Sheriff Cabell. Upon the issue as to whether or not the witness Chamberlain was an accomplice, it might have been permissible for the court to admit testimony of Sheriff Cabell in those particulars wherein he testified to facts indicating that the witness Chamberlain was not an accomplice, but merely a detective; but, if the testimony was admitted for this purpose, it would be the duty of the court to instruct the jury that it was admitted for this purpose alone. We have heretofore held that, if a party is acting as a detective, he would not be guilty as an accomplice. And certainly, where the evidence tends to show a witness was an accomplice, it would not be permissible to allow the witness to corroborate himself by detailing the facts he proposed to testify to, to another witness, to wit, the sheriff, and have that witness repeat said conversation, thereby corroborating the accomplice. We notice in this connection that the court, in the eighth subdivision of the charge, instructed the jury as follows: "In passing upon the defendant's guilt or innocence in this case, you will not consider that part of Sheriff Cabell's evidence, if any, that relates to what the witness Chamberlain may have said to him about the defendant bringing to him strays, stolen, or other stock, and what he was to do about it. Such evidence, if any, was admitted solely for the purpose of assisting you, together with all the other witnesses, if any, in passing upon the credibility of the said Chamberlain as a witness, and in weighing his evidence." It will be readily inferred from what we have heretofore said that this charge is erroneous, in that the same proposes to admit the testimony of Sheriff Cabell on the issue of the credibility of the witness Chamberlain, whereas we have uniformly held that an accomplice can not corroborate himself in any such way. The other evidence tending to show that the witness Chamberlain was an accomplice, the State certainly would have the right to show facts indicating that the witness Chamberlain was not an accomplice, but a detective. In other words, if the State could show that the witness Chamberlain was acting as a detective, in conjunction with the officers, and only that, he would not be an accomplice; and, if the evidence was introduced for this purpose, it would be the province and duty of the court to limit the same to that specific purpose. Stanford v. State,

34 Texas Crim. Rep., 89; McKenzie v. State (Texas Crim. App.), 32 S. W. Rep., 543; Riojas v. State, 36 Texas Crim. Rep., 182; Woods v. State, 37 Texas Crim. Rep., 459; Doucette v. State (Texas Crim. App.), 45 S. W. Rep., 800.

Appellant contends that the court erred in permitting the witness Chamberlain to testify that Sheriff Cabell came to his place, and took three of the horses away that defendant brought to his place. This identical question was decided by this court in Canada v. State, 29 Texas Criminal Appeals, 537, in which the court laid down this principle: Evidence that the alleged owner of the stolen property pointed out, claimed, and took possession of the same when the defendant was not present, is hearsay, res inter alios acta, and inadmissible to establish the allegation of ownership. It follows, therefore, that it would not be permissible to prove what became of the horses after appellant's arrest.

Complaint is also made of the court permitting Chamberlain to testify that one Black came and identified the horses and took them away, and also of permitting Whit Webb, for the State, to testify that he took three of the horses out on the range near Letot, and turned them loose. Under the principle annunciated above we do not think it was proper to admit this testimony.

Appellant also contends that the court erred in permitting the witness Chamberlain to testify that Sheriff Cabell came to him and told him to trade for any horse that defendant brought to him, and that he would see him right. As stated, it was error for the court to admit this testimony unless it was on the issue as to whether or not the witness Chamberlain was an accomplice.

Appellant complains "that the court erred in permitting the witness Chamberlain to testify that defendant came and waked him up, and he went to the jail and waked Rhodes and Work, two deputy sheriffs, and one of them 'phoned somebody, and they went to the stable, where defendant was arrested. Without reviewing this question further than as stated, we think there was no error, because it does not appear that any conversation was detailed by the witness Chamberlain with the deputy sheriffs, nor that any conversation the deputy sheriffs had with the witness Chamberlain was testified to, except the bare notice. We do not think it would be error to permit the witness to testify that he notified the officers, and then to state that the officers were present.

We do not think the court erred in overruling the application for postponement or continuance of this case. No diligence was shown as to the witnesses, and, in the light of the record before us, the evidence is not probably true. Nor do we think the court erred in failing to grant a new trial for the want of the testimony of W. F. M. Hines, on the ground that he was a newly discovered witness, and was not known to defendant before the trial. This does not come within the rules as to newly discovered evidence.

Nor do we think the court erred in his charge on alibi, but we believe the same is a proper presentation of the law of alibi. Nor do we think

the court erred in charging the law of principals. We do not think the court erred in failing to charge on recent possession of stolen property, nor that the witness Chamberlain was an accomplice. We have uniformly held that it was proper for the court to submit the issue of accomplice to the jury for their consideration.

We have reviewed all of appellant's assignments of error, and, other than as stated above, we find no error in the ruling and action of the court. For the errors discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*