J. M. JAMAIL, alias MANZU JAMAIL, v. THE STATE. ₹

No. 8299.  Delivered Jan. 28, 1925.

1.—Robbery—Absent Witnesses—Reproducing Testimony—Proper Predicate for.

The reproduction of the testimony of a witness given in the examining court, at which the accused was present, and afforded the opportunity of cross-examination is permissible when it is made to appear that the residence of the witness is out of the state, or that he has removed beyond the limits thereof. See Arts. 832 and 834 C. C. P. The nonresidence of the absent witnesses was sufficiently established.

2.—Same—Evidence—Identification of Property—Hearsay Inadmissible.

Appellant complains of the testimony of witness Martin a police officer, admitted over his objection to the effect that the three Johnston's and O'Hare at the police station identified their property that they had been robbed of. This testimony was hearsay, and should have been excluded. In view of the fact, however, that the three Johnstons and O'Hare had testified to their own identification at the police station of the same property, the receipt of the testimony of the police officer could not have injured appellant.

Appeal from the Criminal District Court of Harris County. Tried below before the Hon. C. W. Robinson, Judge.

Appeal from a conviction for robbery; penalty, five years in the penitentiary.

The opinion states the case.

*Love, Wagner & Wagner,* of Houston, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—The offense is robbery; punishment fixed at confinement in the penitentiary for a period of five years.

In the indictment, the appellant J. M. Jamail, Aubrey Bingham, and Mattie Bingham were charged with the offense. John Johnston was named as the injured party. The property taken consisted of four fur coats, two fur capes and three fur scarfs.

The testimony of John Johnston, Neal O'Hare, William Johnston and Henry Johnston was introduced by the State. None of these witnesses were present at the time of the trial but had given testimony upon the examining trial which took place on the 23rd of February, 1923. The testimony of each of said witnesses was reduced to writing, signed and sworn to by them. Its admissibility is challenged upon the ground that the predicate relied upon was insufficient. As part of the predicate, the testimony of the District Attorney is relied upon. He testified and identified four envelopes and letters received by him through the mail. Each of said envelopes was addressed to J. Dixie Smith, Criminal District Attorney, Harris County, Houston, Texas. Each of said envelopes was postmarked "Madison Square Station, New York, April 14, 5 P. M., 1923."

The State introduced a handwriting expert who gave the opinion that the signatures to the letters in question were in the same handwriting as the signatures to the testimony of the witnesses.

The letters were all alike save the signatures. They were introduced in evidence and read as follows:

"Mr. J. Dixie Smith, Criminal District Attorney, Harris County, Houston, Texas.
Dear Sir:
I am the identical John Johnson who testified in the examining trial of J. M. Jamail on February 23, 1923. At that time I was only in the State of Texas temporarily. My place of permanent residence is Detroit, Michigan. I am now out of the State of Texas permanently and do not expect to return to Texas.        Yours,
JOHN JOHNSTON."

"The envelope bearing the foregoing letter is postmarked as follows: 'Madison Square, New York, April 14, 5 P. M., 1923.' "

The reproduction of the testimony of a witness given in the examining court at which the accused was present and afforded the opportunity of cross-examination is permissible when it is made to appear that the residence of the witness is out of the State or that he has removed beyond the limits thereof. See Arts. 832 and 834, C. C. P.

Appellant through his counsel earnestly contends that the predicate for the reproduction of the testimony of the witnesses John Johnston, Neal O'Hare, Henry Johnston, and William Johnston was insufficient. Under what circumstances such predicate becomes sufficient has been the subject of inquiry and judicial expression many times. See Connor v. State, 23 Texas Crim. App., 378; Parker v. State, 18 Texas Crim. App., 72; also Amer. Law Rep., Vol. 15, p. 529, note. Among the decisions of this court found in the note mentioned are Brent v. State, 232 S. W. Rep., 846; Kerry v. State, 17 Texas Crim. App., 79; Somers v. State, 54 Texas Crim. Rep., 575; Peddy v. State, 31 Texas Crim. Rep., 547; Ripley v. State, 58 Texas Crim. Rep., 489; Pace v. State, 69 Texas Crim. Rep., 27; Sanchez v. State, 69 Texas Crim. Rep., 134; Millner v. State, 72 Texas Crim. Rep., 45, also 75 Texas Crim. Rep., 45; Young v. State, 82 Texas Crim. Rep., 257. In each of the above cases the predicate was held sufficient. In others, among which the following appear, the predicate was inadequate: Wingo v. State, 229 S. W. Rep., 858; Nixon v. State, 53 Texas Crim. Rep., 325; Tippett v. State, 37 S. W. Rep., 860; Martinas v. State, 26 Texas Crim. App., 91.

In Connor v. State, 23 Texas Crim. App., 384, it is said:

"The fact that a party is beyond the jurisdiction of the court, or beyond the limits of the State, may, as any other fact, be established by circumstantial evidence."

Without reviewing all of the precedents, it occurs to us that the facts which were before the court in the Connor case, supra, and in Parker's case, 18 Texas Crim. App., 72, are not dissimilar or more cogent than those relied upon by the State in the present appeal.

In the Connor case, supra, the witness Auger was tendered. As a predicate for the reproduction of his testimony, Carlton, a Major in the United States Army, testified that at the time Auger testified in the examining court, he was an officer in a certain company of the United States infantry, temporarily stationed at Port Elliott, Texas, which company, according to the officer mentioned, had been ordered to Fort Sill, in Indian Territory, and some six weeks before the trial, Auger, as a member of that company, had been ordered to Fort Sill, was furnished transportation and had departed on his journey. The witness had received a telegram signed A. A. Auger, announcing his arrival at Fort Sill. The objections urged were in substance such as

9   T. C.—9.

were made against the receipt of the letters to which reference has been made in the present record.

In Parker's case, supra, as a predicate for the testimony of Young, the witness Berry, a brother-in-law of Young, testified that he (Young) and his family had left Texas to go to Tennessee; that the witness had received a letter from Young's wife which was postmarked in Tennessee. Sanders, the stepfather of Young, testified that he had left Texas with the declared intention of going to Tennessee and stated that he did not know whether he would remain there but might return to Texas. Sanders also said that his wife had received a letter from Young's wife in which she mentioned Young. The objection urged against the receipt of this testimony was that it was hearsay; that none of the letters were written by Young and that the evidence touching them was incompetent. Without discussing the facts in detail, the court held that the predicate was sufficient for the introduction of Young's testimony.

In the present case, aside from the reproduced testimony, it appears that the owners of the property were sailors. This appears from the testimony of the witness Blaylock who drove the Hudson car used by the appellant in the robbery. It also appears from the testimony of the witness Gilmore at the holding of the examining trial that there were four sailors who were concerned in the alleged robbery whose names were given as John, Henry and William Johnston and Neal O'Hare. This witness also testified that the sailors stated that they resided in Scotland. To this testimony we find no objection urged.

The witness Oliver, who conducted Mrs. Mattie Bingham to the room which was occupied by John Johnston and his companions, described them as sailors and said that Mrs. Bingham asked him if she could see the sailors who had the furs and that he conducted her to their room. Mrs. Bingham testified that the appellant gave her a roll of bills and told her to go to the hotel and ascertain from the porter where the sailors were and to pretend that she wanted to buy their furs.

The letters introduced in evidence were in envelopes bearing the postoffice stamp showing that they were mailed at Madison Square Station, New York City, on April 14, 1923. The signatures to the letters were compared with those attached to the testimony of the witnesses given at the examining trial and possessed a marked similarity as shown by the handwriting expert who testified. We think these circumstances, together with the direct testimony that the persons were sailors and that they resided in a foreign country, were sufficient to show that at the time of the trial they were non-residents and not within the jurisdiction of the court and were therefore sufficient to warrant the introduction of the written testimony of the witnesses given upon the examining trial.

According to the testimony of John Johnston, he was a sailor on a British ship which stopped at New Orleans. He and his companions came on the train to Houston, where they lost four fur coats, three fur scarfs and two fur capes valued at $3,000. About eleven o'clock at night, while at the Fields Hotel, a bellhop came with a lady to the room occupied by Johnston and his companions and said that she wanted to buy a fur coat. After trying one of them on, she said she was running a rooming house and would buy the whole lot of furs which were exhibited to her. Johnston and his companions, taking the sack of furs with them, accompanied the lady to a Hudson car standing on the street. As they were riding on the Main street, a Ford car containing two men drove along side of them and ordered the occupants of the Hudson car to get out. In the Hudson car were a chauffeur, the lady, Johnston and his three companions. The chauffeur did not get out. The lady got out but did not throw up her hands. Johnston and his companions did so and were told to "beat it" to town. They all did so because they were afraid of being shot by the robbers. The matter was reported to the officers and the witness afterwards saw the furs in possession of the officers at the police station. Johnston's companions gave substantially the same testimony as that given by Johnston.

According to the testimony of Mattie Bingham, on the evening that the offense is charged to have taken place, her husband and Jamail came to her house and told her to fix up and go to the Fields Hotel where she would find four sailors who had furs for sale. He told her to tell them that she had a rooming house and that several girls lived there; that she was pretty sure the girls and herself would buy the furs. Jamail gave her some money, a roll of bills, to show to them when she went to the hotel. The three went to the Fields Hotel in Jamail's Ford car. She met the porter and requested him to show her the room where the sailors were with their furs. She met the sailors and induced them to go with her to a car which she said was downstairs. Jamail and her husband told her that it would be there. They put the furs in a sea-bag and went to the street where, in a few moments a Hudson car driven by Blaylock came up. Mrs. Bingham and the sailors got in the car and took the furs with them. She told the driver of the car that they wanted to go to San Felipe. They selected a street with a rough road and were driving slowly when Jamail and her husband drove up and ordered them to stop. After the sailors were driven away, she got into the front seat of the Hudson car. The party, except Jamail, drove to the home of Jamail, took the furs in the house and waited there for Jamail to return. He subsequently came in and told them that the officers had been called and to hide the stuff. They put the furs back in the Hudson car and took them to the home of Jamail's sister, after which they went to bed. About 1:30 a. m. the

officers woke them up and asked for the furs.    Mrs. Bingham described the sea-bag and also the furs.

Appellant's sister testified that the bag was left at her house by her brother.    She heard others talking to him at the time he came there. Later in the night the officers came and asked for the bag. This came from the testimony of the appellant's sister.

In another bill of exceptions it is made to appear by the testimony of Martin that John Johnston, William Johnston, Henry Johnston and Neal O'Hare appeared at the police station and "all four of them identified the furs as being the furs that they had lost and that were taken from them at the time of the robbery" and that this identification was made out of the presence of the appellant.    It affirmatively appears that this testimony was used as original testimony against the appellant.    That this was hearsay and improperly admitted we think is not debatable.    See Fortune v. State, 259 S. W. Rep., 575; Green v. State, 120 S. W. Rep., 1002; Clay v. State, 51 S. W. Rep., 212; Lunsford v. State, 190 S. W. Rep., 158; Ballew v. State, 34 S. W. Rep., 616.

Due to the fact that the furs were traced by other testimony to the police station and were there identified by Johnston, the owner, and his companions as shown by their reproduced testimony, the receipt of the testimony of the police officer to the effect that Johnston and others identified the furs at the police station could not have injured the appellant.    He seems to have offered no defensive testimony and there was no controverted issue touching the identity of the property.

The judgment is affirmed.

*Affirmed.*